TOM N. MULLIS, M.D., Individually and on Behalf of Himself and All Other Stockholders of 221 NORTH VIRGINIA STREET, INC., a Nevada Corporation, dba SILVER SPUR CASINO, Appellants, *v.* NEVADA NATIONAL BANK, a National Banking Association, Respondent.

No. 13642

December 9, 1982

654 P.2d 533

*Eric Zubel, Jeffrey N. Samuels; Darrell L. Clark,* Las Vegas, for Appellants.

*Guild, Hagen & Clark,* and *C. David Russell,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This appeal involves the district court's interpretation of various loan documents. Summary judgment was entered in favor of the author of the subject documents. Because substantial factual disputes are both material and apparent, we must reverse.

In March of 1977, appellant Mullis and respondent Nevada National Bank (Bank) entered into a loan agreement under which the Bank loaned Mullis $2.1 million. This loan was evidenced by a promissory note secured by Mullis's real and personal assets, including approximately 867 shares of stock in the Silver Spur Casino (Silver Spur).

In 1979, the Silver Spur declared a dividend from which Mullis received approximately $85,000. Mullis immediately loaned the $85,000 back to the Silver Spur. Shortly thereafter, Mullis defaulted in his payments on the promissory note and the loan became delinquent. Rather than declare a default and demand payment in full, the Bank elected to assist Mullis in his efforts to sell some of his assets. These efforts, however, proved to be futile.

Thereafter, the Bank advised the Silver Spur that it claimed the right to any dividends and/or earnings on Mullis's stock by virtue of the Pledge and Security Agreement entered into between the parties as part of the March, 1977 loan transaction. When the Silver Spur decided to distribute the corporation's retained earnings to its shareholders, it sent a letter to both Mullis and respondent informing them that the former's share of the distribution was $28,890, and that the corporation would hold that amount pending distribution instructions from both parties.

Mullis then filed a complaint against the Silver Spur and its corporate officers and directors alleging, among other things, that the Silver Spur was indebted to him in the sum of $85,000 by virtue of the loan of March of 1979, and that he was entitled to the $28,890 as his share of the distribution of the retained earnings. The Silver Spur did not contest these allegations and voluntarily deposited the total amount with the clerk of the court.

The Silver Spur responded to the complaint by filing a third

party complaint for interpleader against the Bank on the ground that the Bank had previously made claim to all funds which were now deposited with the court. The Bank, in turn, counterclaimed for the $85,000 claiming that it was entitled to this amount as a dividend declared by the Silver Spur. Eventually, all the parties to the action entered into a stipulation whereby appellants' complaint against the Silver Spur would be dismissed as would the Bank's counterclaim against the Silver Spur. However, the court retained jurisdiction to determine the rights of the parties to the deposited funds. In the interpleader action, the district court determined that there existed no genuine issue of fact and, as a matter of law, the Bank was entitled to the sum of $129,795.75.[1] We reverse.

The constraints applicable to a summary proceeding are well-defined. Trial judges are admonished to exercise great caution in granting summary judgment. Litigants are not to be deprived of a trial on the merits if there is the slightest doubt as to the operative facts. "Summary judgment may not be used as a short cut to the resolving of disputes upon facts material to the determination of the legal rights of the parties." Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492 (1954). The trial court should review the record searchingly for material issues of fact, the existence of which eliminate the propriety of summary treatment. Further, pleadings and documentary evidence must be construed in a posture which is most favorable to the party against whom the motion for summary judgment is directed. Dugan v. First Nat. Bank In Wichita, 606 P.2d 1009 (Kan. 1980); Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963). An entry of summary judgment is proper only when there are no issues of fact and the moving party is entitled to such an expedited judgment as a matter of law. And the burden of proving the absence of triable facts is upon the moving party. *Id.*

It is our function on review to determine, in a light most favorable to appellants, whether factual issues exist. *Parman, supra.* We may also be required to determine whether the law has been correctly perceived and applied by the district court. Our review of the record indicates that a genuine issue of material fact exists with respect to whether the parties specifically intended to exclude a security interest in the cash dividends derived from the shares of Silver Spur stock pledged as security.

[1]The funds deposited with the clerk of the court had been deposited in an interest bearing account. By the time the lower court entered judgment in the interpleader action, the amount had grown to this sum.

The express language of the loan agreement, coupled with the even more precise language under paragraph 2 of the "Pledge and Security Agreement" leave substantial doubt as to whether the Bank had a security interest in Mullis's cash dividends from the Silver Spur stock.[2]

It would appear to us that the most that could be said in support of *respondent's* position regarding the cash dividends from Mullis's Silver Spur stock is that the agreements relating thereto may be ambiguous. In view of the established rule requiring an agreement to be construed most strongly against the authoring party, Estwin Corp. v. Prescription Ctr. Pharmacy, 93 Nev. 251, 563 P.2d 78 (1977), it is clear that no reasonable construction of the instruments here involved would support a summary conclusion favoring the Bank's entitlement to the cash dividends. If, as held by the district court, the agreements are "clear and unambiguous", then, in our view, the specific, non-boilerplate language excluding Mullis's cash dividends from the Bank's security would seem to be dispositive. We nonetheless conclude that sufficient ambiguity exists to warrant a trial on the merits. "Where there is ambiguity in a written contract and extrinsic evidence is required to ascertain the intention of the parties summary judgment should not be entered in the face of contradictory or conflicting evidence." Mobile Acres, Inc. v. Kurata, 508 P.2d 889, 895 (Kan. 1973). Accordingly, we must reverse the district court's order granting summary judgment to the Bank. Since our decision is dispositive of this appeal, we decline to consider other issues raised by the parties. Therefore, we reverse and remand the case for further proceedings in accordance with this opinion.

---

[2]It seems clear, absent strong evidence to the contrary, that paragraph 2 entitled "Distributions On Collateral; Subscription Rights" applied to all collateral held by the Bank including the Silver Spur stock owned by Mullis. It seems equally clear that the statement identified by the asterisk at the bottom of page 6, which applied to the paragraph 2 language referring, *inter alia,* to stock dividends, was separately bargained for since it was obviously added to the completed agreement by a different typewriter. The referenced statement is written as an exception to the enumerated collateral in paragraph 2 and reads as follows: "Save and except for any cash dividends or royalty distributions."