ERNEST J. COLLINS, APPELLANT, *v.* UNION FEDERAL SAVINGS AND LOAN ASSOCIATION, AKA FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, ET AL., RESPONDENTS.

No. 12961

April 21, 1983                                662 P.2d 610

*Roger A. Bergmann,* Reno, for Appellant.

*Vargas & Barlett,* Reno; *McKenna, Conner & Cuneo,* Los Angeles, California, for Respondents.

## OPINION

By the Court, MANOUKIAN, C. J.:

This appeal involves diverse legal questions all incidental to a $1,500,000 loan secured by a deed of trust on commercial property, the execution of the power of sale pursuant to said deed and a summary judgment entered against the appellant, Ernest Collins, debtor and trustor.

In 1973, Collins owned a parcel of real property on Fourth Street in Reno. In March of that year, Collins entered into a mortgage loan contract with respondent First Federal Savings and Loan Association, by which First Federal loaned $1,500,000 to Collins to finance the construction of a hotel on his property.[1] The loan agreement included a promissory note, bearing interest at an annual rate of 8.5 percent, a deed of trust, a Loan Settlement Statement, a Building Loan Agreement and a Financing Statement.

The promissory note specified that Collins was to repay First Federal in 240 equal monthly installments. The installments, in the amount of $12,078.45, were to commence on February 1, 1974. In the event the installments were more than thirty days late, First Federal retained the right to increase the rate of interest on the unpaid portion of the principal sum at 1 percent per annum during the period of delinquency. The Loan Settlement Statement reiterated some of the provisions of the promissory note and modified others. It provided that interest would not run for a ninety day period and that interest only payments of $10,624.50 would be due after the ninety day period until the February payments were to begin. That document also provided that Collins was to contribute $85,360.36 in personal funds, $48,850.36 of which was to be applied to loan costs and title search charges, and the remaining $36,510.00 of which was allocated to a Loan-in-Process (LIP) account in Collins' name.

---

[1] When the contract was executed, First Federal was known as Union Federal Savings and Loan Association. Hereinafter we shall refer to First Federal Savings and Loan Association as First Federal.

Collins was charged an initial loan fee ("points") of 2.5 percent of the loan amount ($37,500), a title policy premium ($3,000), recording fees ($8.00), tax service fee ($43), application fee ($265), and $8,034.36 in prepaid interest for the period June 7-July 7, 1973.

The Building Loan Agreement set out the method of disbursement for the loan proceeds. Those funds, along with Collins' personal funds, were placed in the LIP account. The monies deposited in that account were to be disbursed at the request of the contractor and with the approval of Collins and First Federal.

The business opened in January 1974 under the name of the Reef Hotel. It was economically unsuccessful and Collins made several attempts to dispose of the property by sale or lease. Collins suspended payment to First Federal in May 1975. First Federal initiated foreclosure proceedings on July 16, 1975.

According to First Federal officers, they encouraged Collins to cure the default and granted several postponements of the foreclosure sale to enable Collins to secure a buyer or lessee. In his deposition, Collins admitted that although he could have arranged financing to meet his delinquencies with First Federal, he made a conscious choice not to pay the Association. A foreclosure sale occurred on January 15, 1976, under the supervision of Lawyers Title Insurance, trustee. First Federal submitted the only bid—a credit bid in the amount of the indebtedness ($1,586,872). First Federal subsequently resold the hotel property with a substantial credit component.

Collins' initial complaint and amended complaint, filed in July 1976 and June 1977, respectively, alleged intentional interference with prospective economic advantage and contractual relationships, civil conspiracy, disparagement and interference with a "fair and open" trustee sale. Collins sought imposition of a constructive trust on any money realized by First Federal from the foreclosure sale together with general and punitive damages.

In August 1979, Collins filed a Supplemental Complaint at the direction of the trial court. In that complaint, Collins additionally alleged that the interest charged by First Federal was usurious and constituted a breach of contract. He further alleged that because of the excess interest, he was not in default when the notice of default was filed, and as a consequence, the foreclosure sale was wrongful. Collins also alleged that the late charges asserted by First Federal were illegal and should be considered as "interest" for the purpose of usury calculations.

Respondents filed three motions for summary judgment encompassing all of appellant's claims. Appellant filed a

motion for partial summary judgment on the usury and late charge/penalty claims. The trial court granted respondents' motions as to the "chilling the sale" claim, the intentional tort claims, the wrongful foreclosure claim and the usury claim. It also determined, as a matter of law, that the officers were not personally liable to Collins and that punitive damages were not recoverable. A breach of contract claim (charging interest in excess of 8.5 percent) remains undetermined.

A.  *Usury Claim.*[2]

1.  *Applicable Rate.*

The trial court's ruling implicitly adopted a rate of 12 percent per annum as the applicable rate of interest for appellant's usury claim. Respondents, however, urge that for the purposes of this appeal the correct rate of interest is 18 percent per annum. In 1973, when the loan agreement was executed, NRS 99.050 provided for a maximum interest rate of 12 percent per annum. NRS 99.050 was amended in 1979. *See* 1979 Nev. Stats. Ch. 498. Although that amendment increased the maximum rate to 18 percent per annum, it also included a provision making the increased rate inapplicable to any loan contract made before the amendment's effective date. *Id.* at § 4. Thus, the lower court did not err in utilizing 12 percent per annum as the maximum rate of interest.

2.  *One vs. Two Loans.*

Appellant next contends that the transaction with First Federal involved two separate loans: a "construction loan" from

---

[2]Both parties filed motions for summary judgment with respect to the usury and late charges issues. When this occurs, the parties are normally precluded from arguing on appeal that the lower court erred in granting a summary judgment because a genuine issue of material fact exists. Exchange Bank v. Strout Realty, 94 Nev. 86, 575 P.2d 589 (1978); Estate of Sawyer v. Ygnacio Medical Center, 92 Nev. 171, 547 P.2d 317 (1976); State ex rel. Welfare v. Capital Convalescent Center, Inc., 92 Nev. 147, 547 P.2d 677 (1976); City of Las Vegas v. Cragin Industries, Inc., 86 Nev. 933, 478 P.2d 585 (1970). The fact that both parties moved for summary judgment on a particular issue, however, does not constitute a waiver of a judicial determination of whether a material issue of fact exists on either side of the case. Midland Insurance Company v. Yanke Plumbing & Heating, Inc., 99 Nev. 66, 657 P.2d 1152 (1983). *See also* Young Electric Sign Co. v. State, 98 Nev. 536, 654 P.2d 1028 (1982); *cf.* Cheqer, Inc. v. Painters and Decorators Joint Committee, Inc., 98 Nev. 609, 655 P.2d 996 (1982), (cross motions for summary judgment on two separate legal theories). *Accord* Securities & Exchange Com'n v. Am. Commodities Exch., 546 F.2d 1361, 1365 (10th Cir. 1976). Thus, we must review the record to determine whether a genuine issue of material fact exists.

March 1973 to December 1973; and a "take-out" loan commencing January 1974 and running for a period of twenty years. According to appellant, the Building Loan Agreement established a separate construction agreement, while the Promissory Note and Deed of Trust created a permanent financing agreement for a period of 240 months. If the "construction" loan is viewed separately from the "take-out" loan, appellant asserts that the "construction" loan would be usurious. The lower court, however, determined that only one loan was contemplated by the loan agreements. We agree.

The general presumption is that where two or more written instruments are executed contemporaneously the documents evidence but a single contract if they relate to the same subject matter and one of the two refers to the other. McClean v. Hillman, 352 S.W.2d 310, 313 (Tex.Civ.App. 1962). *Cf.* Haspray v. Pasarelli, 79 Nev. 203, 380 P.2d 919 (1963) (separate memorandum part of contract for purposes of statute of frauds); Bowker v. Goodwin, 7 Nev. 135 (1871) (separate agreement part of promissory note for purposes of revenue stamp requirement). In the present case, the loan documents constitute the only evidence offered in support of or in opposition to the motion for summary judgment which is relevant to the issue of the number of loans. No evidence was presented by affidavit, or otherwise, that the parties intended those documents to create two separate loans. The documents are unambiguous with respect to this issue. *Cf.* Mullis v. Nevada National Bank, 98 Nev. 510, 654 P.2d 533 (1982) (ambiguous contracts can create triable issue of fact). All the relevant documents were executed by the same parties on March 7, 1973. All of those documents address the same subject matter—a $1,500,000 loan between appellant and respondent First Federal. The Building Loan Agreement states that deposit of the loan proceeds in the LIP account "shall conclusively be deemed a full and complete consideration for [the promissory] note and Deed of Trust. . . ." Because no genuine issue of material fact existed, the trial court did not err in finding, as a matter of law, that only one loan was contemplated by the loan agreements. *See generally* McPherron v. McAuliffe, 97 Nev. 78, 624 P.2d 21 (1982).

3. *Duration of the Loan.*

The lower court held that the amounts of interest paid by Collins must be amortized over the life of the loan as originally provided in the promissory note and other loan documents. Collins, however, challenges that ruling, arguing that for the

purposes of usury calculations, interest should be prorated over the "actual" life of the loan, *i.e.,* from the inception of the loan to the date of default or that interest should be calculated for each year of the loan. Collins ignores a fundamental principle of usury law—that "[t]he usurious character of a transaction is determined *as of the time of its inception.* " Curtis v. Securities Acceptance Corp., 91 N.W.2d 19, 26 (Neb. 1958) (emphasis added). The "actual" life of the loan is not to be considered when determining whether a loan is usurious. Watson Const. Co. v. Amfac Mortgage Corp., 606 P.2d 421 (Ariz.App. 1979).

Nevertheless, Collins contends that NRS 99.050 (1973) should be interpreted to mean that if interest charged on a loan exceeds 12 percent of the outstanding principal for any one year, then the loan is usurious. Although NRS 99.050 (1973) provides that a contracted rate of interest may not exceed the rate of 12 percent per annum, that statute does not mean that the interest rate cannot exceed 12 percent annually or 12 percent for any one year. The words "twelve percent per annum" refer to the rate of interest and not the time of payment. Montgomery Federal Savings & Loan Ass'n v. Baer, 308 A.2d 768, 771 (D.C. Cir. 1973). Thus, interest payments, for the purpose of usury calculations, must be prorated over the entire term of the contract. *See* Tanner Development Co. v. Ferguson, 561 S.W.2d 777 (Tex. 1977); *see also* Sharp v. Mortgage Security Corp. of America, 9 P.2d 819 (Cal. 1932).

4. *Additional Charges as "Interest" for Usury Purposes.*

Collins contends that the trial court erred in concluding, as a matter of law, that expenses for title insurance, recording fees, tax service fees and loan application fees should not be added to the amount of interest paid for purposes of computing usury. The loan settlement agreement reflects that approximately $3,316 in various fees was paid at the inception of the contract.

The well-settled rule is that actual and reasonable expenses incurred as part of a loan transaction do not constitute interest for purposes of usury. *See, e.g.,* Harris v. Guaranty Financial Corp., 424 S.W.2d 355 (Ark. 1968); Klett v. Security Acceptance Co. 242 P.2d 873, 884 (Cal. 1952); Pushee v. Johnson, 166 So. 847 (1936). Respondents attached to their motion for summary judgment an affidavit by Marvin Wholey, president of First Federal. Wholey swore that he was acquainted with the

service fees charged appellant. His affidavit states that all of the disputed charges were actual expenses incurred by First Federal in establishing and servicing the loan. Collins' opposition papers are silent as to any specific facts showing that there is a genuine issue as to the reasonableness or actual expense of the service fees charged.

NRCP 56(e) provides that when a motion for summary judgment is made and supported as provided in Rule 56, an adversary party who does not set forth specific facts showing a genuine issue to be resolved at trial may have a summary judgment entered against him. Van Cleave v. Kietz-Mill Minit Mart, 97 Nev. 414, 633 P.2d 1220 (1981); Bird v. Casa Royale West, 97 Nev. 67, 624 P.2d 17 (1981). Collins provided no documentation in support of his allegations that the service fees charged at the inception of the loan should be calculated as interest. Thus, the lower court properly granted respondents' motion for summary judgment.

5.   *Late Charges.*

The promissory note executed by the parties contained a provision that allowed First Federal to increase the rate of interest upon the balance of the note "one per cent (1 percent) per annum during the period that [any] delinquency continues." Pursuant to this provision, First Federal collected approximately $5,700 in late charges. Appellant argues that the late charges collected by First Federal should be nullified as a penalty under state law because they constitute an unreasonable assessment of liquidated damages. Additionally, Collins contends that under state law, the late charges he paid should be added in the usury calculation as interest. *See, e.g.,* Garrett v. Coast and So. Federal Savings and Loan Ass'n, 511 P.2d 1197 (Cal. 1973) (late charges invalid unless reasonably related to actual damages); Consolidated Loans, Inc. v. Smith, 190 So.2d 522 (La.App. 1966) (late charges constitute additional interest). The lower court found that the federal regulations which permit federal savings and loan associations to include late charge provisions in their loan agreements, *see* 12 C.F.R. § 545.8-3 (1982), preempt any state law purporting to govern this question. Appellant argues, however, that the lower court improperly granted summary judgment in respondents' favor because the question of whether state law governs the validity of the late charges imposed on appellant's loan by First Federal involves complex constitutional issues of large public import.

Although it is true that a motion for summary judgment should be denied if the record below is inadequate for consideration of the constitutional issues presented or to determine

whether genuine issues of material fact exist, *see, e.g.,* Carter v. Stanton, 405 U.S. 669 (1972) (record inadequate); Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970) (genuine issue of material fact present), a case may be disposed of by summary judgment if the constitutional question has been foreclosed by previous decisions. Agustin v. Quern, 611 F.2d 206 (7th Cir. 1979). *See also* Veterans and Reservists for Peace in Vietnam v. Regional Commissioner of Customs, 459 F.2d 676 (3d Cir. 1972) (summary judgment for government affirmed in action challenging constitutionality of Trading with the Enemy Act), *cert. denied,* 409 U.S. 933 (1972); Teague v. Regional Commissioner of Customs, 404 F.2d 441 (2d Cir. 1968) (constitutionality of Trading with the Enemy Act upheld on motion for summary judgment), *cert. denied,* 394 U.S. 977 (1969); Hawthorne v. United States, 115 F.2d 805 (5th Cir. 1940) (constitutionality of cotton-marketing quota provisions of the Agricultural Adjustment Act upheld after lower court rendered summary judgment in government's favor). In Agustin v. Quern, *supra,* the circuit court affirmed the district court's summary judgment denying the plaintiff's claim that a retrospective application of an amendment to a state law was tantamount to an *ex post facto* law. There, a well-developed body of *ex post facto* law permitted the lower court to render a summary judgment.[3] *Id.* at 209.

Recently, the U.S. Supreme Court held that regulations issued by the Federal Bank Board allowing federal savings and loan associations to include in their loan agreements due-on-sale clauses preempted California decisional law which prohibited those clauses as unreasonable restraints on alienation.[4] Fidelity Federal Savings and Loan Ass'n v. de la Cuesta, 102 S.Ct. 3014 (1982) (Rhenquist, Stevens, J.J., dissenting). Because the federal regulations authorizing the imposition of late charges were adopted in the same document as were the due-on-sale regulations, *see* 12 C.F.R. 545.6-11(d)-(f) (1977); 41 Fed. Reg. 6283 (1976), and shared equally the Bank Board's expressions of preemptive intent, *see* 41 Fed. Reg. 6283, 6284

---

[3]The district court in *Agustin* relied on a well-developed body of *ex post facto* law in reaching its opinion. In the instant case, however, the lower court granted the summary judgment *before* the U.S. Supreme Court handed down Fidelity Federal Savings and Loan Ass'n v. de la Cuesta, 102 S.Ct. 3014 (1982). Nevertheless, "if a decision below is correct, it will not be disturbed on appeal even though the lower court relied upon wrong reasons." Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 403, 632 P.2d 1155 (1981). Thus, it is immaterial that the lower court did not rely upon *Fidelity* in granting respondents' motion for summary judgment.

[4] *See* Wellenkamp v. Bank of America, 582 P.2d 970 (Cal. 1978).

(1976), we hold that Fidelity, *supra,* is dispositive of the preemption issue.

In the preamble accompanying the final publication of the late charge regulation, the Board explained its intent that the late charges imposed by federal savings and loans be governed exclusively by federal law. 41 Fed. Reg. 18286, 18287 (1976). The Board stated that "it *was* and is the Board's intent to have late charges . . . of federal associations governed exclusively by federal law. Therefore, charging of late charges . . . by federal associations shall be governed and controlled solely by § 545.6-11 [now 12 C.F.R. § 545.8-3 (1982)]. . . . Federal associations shall not be bound by or subject to any conflicting state law which imposes different late charges . . . nor shall federal associations attempt to impose a higher late charge than permitted in § 545.6-11(e) . . . on the ground that such higher charge is permissible under state law." 41 Fed. Reg. 18286, 18287 (1976) (emphasis added). The Board has unequivocally expressed its determination to displace state law respecting the imposition of late charges.[5]

"Federal regulations have no less preemptive effect than federal statutes. . . . When [an] administrator promulgates regulation intended to pre-empt state law" the regulation will be upheld unless it exceeded the administrator's statutory authority or constituted an abuse of the administrator's discretion. *Fidelity,* 102 S.Ct. 3022. After reviewing the language and history of the Home Owners' Loan Act of 1933, 48 Stat. 128, as amended, 12 U.S.C. § 1461 *et seq.* (1976 ed. and Supp. IV), in light of the court's decision in *Fidelity,* there is no doubt that the promulgation of 12 C.F.R. § 545.8-3(d) was within the administrator's statutory authority and did not constitute an abuse of discretion. *See Fidelity,* 102 S.Ct. at 3025-3031. Accordingly, we hold that the Board's late charge regulation

[5]We recognize that the Board's expression of preemptive intent is somewhat stronger regarding due-on-sale clauses. In 1982, the Board reaffirmed its intent that the due-on-sale practices of federal savings and loan associations "shall be governed exclusively by the Board's regulations in preemption of and without regard to any limitations imposed by state law on either their inlusion [sic] [in a loan contract or their exercise upon sale of the encumbered property]." 12 C.F.R. § 556.9(f)(2) (1982). This reaffirmation, however, was motivated by several state court decisions which had expressed uncertainty regarding the Board's intent that its due-on-sale provisions should govern exclusiviely. *See* 46 Fed. Reg. 39123, 39124 (1981). Thus, the Board's subsequent confirmation of the preemptive nature of its due-on-sale regulations should not be interpreted as indicating that the Board is not as resolute in its intent that the federal late charge regulations also provide the exclusive law on that issue.

preempts application of any state law concerning the imposition, assessment or collection of late charges to federal savings and loan associations. Therefore, the late charges assessed and collected by First Federal do not constitute an unreasonable assessment of liquidated damages and were properly not calculated as interest.[6] *See* C.F.R. 545.6-11(d) (1977); 41 Fed. Reg. 6283, 6284 (1976) (amendments proposed February 6, 1976).

6. *Usury Calculations.*

Appellant contends that the lower court erred in making factual determinations when granting respondents' motion for summary judgment regarding the exclusion of certain items of interest for the purpose of the usury calculations. Specifically, appellant claims that the trial court erred in excluding from its usury calculations the following amounts: (1) $21,166.66 as an erroneous entry of interest paid and reversal of said charge; (2) $95,331.70 as a year to date compilation of interest and not a separate charge of interest; (3) $3,000 as an erroneous entry of late charges as interest; (4) $7,433.42 as an erroneous entry for late charges and reversal thereof. Since both parties presented conflicting evidence concerning the exclusion of the above-enumerated amounts from the usury calculations, appellant argues that the lower court should not have granted the motion for summary judgment. We agree.

Summary judgment may be granted when, as a matter of law, the moving party is entitled to judgment because there is no genuine issue as to any material fact. McPherron v. McAuliffe, 97 Nev. 78, 79, 624 P.2d 21 (1982); NRCP 56(c). "Summary judgment, however, may not be used as a shortcut to the resolving of disputes upon facts material to the determination of the legal rights of the parties." Parman v. Petricciani, 70 Nev. 427, 436, 272 P.2d 492, 496 (1954). *See also* Mullis v. Nevada National Bank, 98 Nev. 510, 654 P.2d 533 (1982). Our review of the record indicates that a genuine issue of material fact exists with respect to whether First Federal improperly

---

[6]Appellant claims that since the loan contract was executed prior to the effective date of the Bank Board's 1976 late charge regulation, application of that regulation would be retrospective, violating the presumption that regulations operate prospectively. *See, e.g.,* Greene v. United States, 376 U.S. 149 (1964). The Bank Board's Resolution No. 76-100, however, both proposes new regulations and interprets a regulation which was effective when the loan agreement was executed. Administrative interpretations of rules and regulations often are employed by appellate courts presented with the task of interpreting the same regulations. Appellant's retrospective argument is simply inapposite.

charged Collins the above enumerated amounts as interest due on his loan.

### 7.  *Interest on Undisbursed Funds.*

Appellant contends that the trial court erred in determining, as a matter of law, that the amount of interest charged may be computed against a principal sum which has not been disbursed to the borrower. The general rule precludes charging interest on such sums. *See, e.g.,* Carson Meadows, Inc. v. Pease, 91 Nev. 187, 533 P.2d 458 (1975); *accord* Tri-County Federal Savings and Loan Ass'n of Waldorf v. Lyle, 371 A.2d 424 (Md.App. 1977); Miller v. First State Bank, 551 S.W.2d 89 (Tex.Civ.App. 1977), *modified,* 563 S.W.2d 572 (Tex. 1978); 92 A.L.R.3d 769 § 8 (1979). A loan is "disbursed" if the borrower has "control" over the proceeds. *See* American Acceptance Corp. v. Schoenthaler, 391 F.2d 64 (5th Cir. 1968), *cert. denied,* 392 U.S. 928 (1968); Williamson v. Clark, 120 So.2d 637 (Fla.App. 1960); Knight v. First Federal Savings & Loan Ass'n, 260 S.E.2d 511 (Ga.App. 1979); Tri-County, *supra.* In the instant case, the material issue of fact is whether Collins had control over the loan proceeds deposited in the LIP account. We conclude that a genuine issue exists concerning that material question of fact.

The Building Loan Agreement attached to respondents' motion for summary judgment is the only evidence which addresses the issue of control of the funds deposited in the LIP account.[7] The Agreement provided that the proceeds deposited in the LIP account would be disbursed only to provide funds for the construction of the Reef Hotel and in accordance with either the "Five Payment Plan" or the "Loan Order Plan." The "Five Payment Plan" stated that funds would be disbursed from the LIP account, subject to First Federal's approval, when the contractor submitted a request for payment based upon actual work completed which was approved by

---

[7]Although respondents' motion incorporated copies of an application for loan, a promissory note, a deed of trust, and the Building Loan Agreement, none of the documents were properly authenticated. *See* Hosmer v. Avayu, 97 Nev. 584, 636 P.2d 875 (1981); NRCP 56(e). *Accord* Hamilton v. Keystone Tankship Corp., 539 F.2d 684 (9th Cir. 1976). The affidavit attached to respondents' motion did not address the "control" issue. Although summary judgment motions which are not supported by any competent evidence should not be considered, *see* Hosmer, at 587, 636 P.2d at 876, uncertificated documents may be considered if not challenged. Cinocca v. Baxter Laboratories, Inc., 400 F.Supp. 527 530 (D.Okla. 1975). Such was the case in the instant proceedings.

owner. The "Loan Order Plan" provided that either Collins or the contractor or both of them could obtain funds for construction by presenting to First Federal a written loan disbursement warrant drawn upon the monies in the LIP account. The warrant constituted a representation that the funds withdrawn would be used in the construction. Although this method of disbursement was not subject to First Federal's approval, the Association did have the power to require Collins and the contractor to produce receipted bills and releases of lien rights concerning the construction of the Reef Hotel prior to disbursement of funds.

The question confronting this court is whether the above-mentioned agreement vested sufficient "control" over the LIP account in appellant so that the loan proceeds were "disbursed," allowing First Federal to charge interest on the full amount of the loan from its outset and without regard to the actual disbursement of funds to appellant. The Maryland Court of Appeals considered a similar issue in Tri-County, *supra*. There, the Maryland court found that although the lender had charged interest on the full amount of the construction loan, 75 percent of the principal had never been subject to the borrower's control, rendering the loan usurious. In *Tri-County,* however, the funds held in reserve for later payment to materialmen were deposited in the lender's general account with a different bank. The account was used for payment of employees' salaries and other monthly expenses of the lender. *Id.* at 425. *See also* American Acceptance Corp. v. Schoenthaler, 391 F.2d 64 (5th Cir. 1968), *cert. denied,* 392 U.S. 928 (1968); Williamson v. Clark, 120 So.2d 637 (Fla.App. 1960). In Knight v. First Federal Savings & Loan Ass'n, 260 S.E.2d 511 (Ga.App. 1979), the borrower contended that an escrow account into which he was obligated to tender $100,000 on a $2,000,000 loan created an accumulation of undisbursed funds upon which interest was improperly charged. Additionally, the borrower asserted that because the lender's approval of withdrawals was required, it had full use of the fund. The Georgia court, however, ruled that the borrower's later allegation was not supported by the record. Since both lender and borrower were permitted to. use the fund only for the replacement and maintenance of the collateral (a college dormitory and furnishings and appliances located therein), the court held that the escrow fund did not create a usurious loan. *Id.* at 515. *See also* Deposit Guaranty National Bank v. Shipp, 205 So.2d 101 (La.App. 1967).

In the present case, the record does not reveal whether the loan proceeds were in fact deposited into the LIP account or

retained in First Federal's general account. Additionally, no evidence was presented to the lower court that established which of the two disbursement plans the parties utilized. Our review of the materials submitted in support of and in opposition to the cross motions for summary judgment demonstrates that a genuine issue as to the material fact of "control" exists. *See* Mullis v. Nevada National Bank, 98 Nev. 510, 654 P.2d 533 (1982).

B.   *Tortious Causes of Action.*

Collins contends that the lower court erroneously granted respondents' motion for summary judgment which dismissed appellant's causes of action for disparagement, intentional intereference with prospective economic advantage and contractual relations, civil conspiracy, breach of fiduciary duty, wrongful foreclosure and chilling the sale against the respondents, First Federal, Wholey, Small and Dwyer. Collins contests that ruling, arguing that since all of the above claims for relief turned on questions of fact concerning the respondents' state of mind, summary judgment was an inappropriate disposition. *See, e.g.,* Feminist Women's Health Center, Inc. v. Mohammad, 586 F.2d 530 (5th Cir. 1978), *cert. denied,* 444 U.S. 924 (1979); Croley v. Matson Navigation Co., 434 F.2d 73 (5th Cir. 1970).

Collins' argument is grounded on a well-established rule of law. Nevertheless, "a party against whom summary judgment is sought is [not] entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." Hahn v. Sargent, 523 F.2d 461, 468 (1st Cir. 1975), *cert. denied,* 425 U.S. 904 (1976). *See also* Moran v. Bench, 353 F.2d 193 (1st Cir. 1965), *cert. denied,* 384 U.S. 906 (1966); Arsenault v. Allegheny Airlines, Inc., 485 F.Supp. 1373 (D.Mass. 1980), *aff'd,* 636 F.2d 1199 (1st Cir. 1980), *cert. denied,* 454 U.S. 821 (1981). In *Hahn,* the appellant suffered a summary judgment as to his claim under 42 U.S.C. § 1983. Appellant's response to the respondent's motion for summary judgment in *Hahn* was comprised of four affidavits and documentary evidence which merely duplicated the allegations contained in appellant's complaint, asserted that certain issues could only be resolved by trial and promised that evidence would be offered at trial in support of the complaint. *Hahn,* 523 F.2d at 467. Although the First Circuit noted that "great circumspection is required where summary judgment is sought

on an issue involving state of mind," the district court's summary judgment was upheld. *Id.* at 468. In *Moran,* the district court granted a motion for summary judgment against appellant's claims under 42 U.S.C. 1983 and 1985. In support of the motion for summary judgment, the respondents had explicitly denied, in their affidavits, all allegations of improper behavior. Appellant's affidavit in response to the respondents' motion for summary judgment merely asserted that the respondents had conspired to deprive appellant of his civil rights. Appellant did not indicate precisely with whom the respondents conspired nor any facts tending to establish the existence of a conspiracy. *Moran,* 353 F.2d at 194. As in *Hahn,* the First Circuit again noted that courts should be cautious in resolving cases involving conspriacy or states of mind by summary judgment. Nevertheless, the *Moran* court held that "by the bare use of the word 'conspiracy,' with no supporting facts that tend to show the existence of an unlawful agreement or prima facie improper behavior, [appellant] has not met the burden of countering affidavits making such explicit denials." *Id.* at 195.

1. *Disparagement, Intentional Interference With Prospective Economic Advantage and Contractual Relation, and Chilling the Sale.*

Several of Collins' claims for relief (disparagement, intentional interference with prospective economic advantage and contractual relations, and chilling the sale) share at least one similar element. *See* Crockett v. Sahara Realty Corp., 95 Nev. 197, 591 P.2d 1135 (1979) (interference with prospective advantage); Feminist Women's Health Center, *supra* (interference with contractual relations); Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963), *cert. denied,* 382 U.S. 844 (1965) (chilling foreclosure sale). These claims are supported by Collins' allegation that First Federal, via its officers, Wholey, Small and Dwyer, wrongfully acted to discourage buyers from dealing with Collins, thereby preventing the sale or lease of the Reef Hotel prior to foreclosure and depressing the amount bid for the Reef Hotel at the foreclosure sale.

In their motion for summary judgment, respondents produced affidavits from Dwyer, Wholey and Small stating that they never spoke to any of the prospective buyers that Collins produced before the foreclosure sale outside of his presence; that they never suggested to any of the prospective buyers that a better deal for the Reef Hotel could be made by First Federal after the foreclosure sale; and that they never acted to discourage prospective bidders from attending the foreclosure sale. In his deposition, Collins stated that he *believed* First Federal had

purposefully discouraged several potential buyers by informing them that Collins was in default on his payment, that there were liens against the property, and that the entire loan was due and payable and not assumable. Additionally, Collins asserts that he *believed* First Federal's officers told prospective buyers not to deal with Collins but to wait until after the foreclosure sale and deal with First Federal directly.

For the most part, Collins' allegations are based on inadmissible evidence. In his affidavit, Collins relies, to a large extent, on hearsay statements of the prospective buyers. Evidence introduced in support of or opposition to a motion for summary judgment must be admissible evidence. *See* NRCP 56(e). Although the party opposing a motion for summary judgment is entitled to all favorable inferences from the pleadings and documentary evidence, *see* Mullis v. Nevada National Bank, 98 Nev. 510, 654 P.2d 533 (1982), the opposing party "is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture." *Hahn,* 523 F.2d at 467. Collins' affidavit in opposition to the motion for summary judgment failed to show that he could produce the requisite quantum of evidence to enable him to reach the jury with his claims. Thus, we affirm the summary judgment as to appellant's claims for disparagement, intentional interference with prospective economic advantage and contractual relations and chilling the foreclosure sale, even though these claims for relief turn on the respondents' state of mind.[8]

---

[8]Appellant, however, argues that because discovery was in its initial stages and none of the prospective buyers which Collins had contacted had been deposed, the motion for summary judgment should have been denied. A trial court may, in its sound discretion, refuse to grant summary judgment if the motion is made at an early stage of discovery because the court feels that further development is needed to assist it in its decision. 10 Wright & Miller, Federal Practice & Procedure: Civil § 2728 at 558 (1978). When a decision lies within the sound discretion of the lower court, this court may overturn that decision only if it is manifestly against the clear weight of evidence. *Cf.* Loyalty Dev. Co., Ltd. v. Wholesale Motors, Inc., 605 P.2d 925 (Hawaii 1980) (judgment granting relief from forefeiture); Franklin v. Bartsas Realty, Inc., 95 Nev. 559, 598 P.2d 1147 (1979) (order denying injunctive relief). Appellant filed his complaint on July 26, 1976. He filed an amended complaint joining First Federal's officers and adding the chilling the sale claim on June 17, 1977. Respondents filed their motion for summary judgment on February 6, 1979. The judge granted the motion on August 25, 1980. Since the appellant had more than two years to participate in discovery and knew the names and positions of all the prospective buyers, the trial court did not abuse its discretion in granting the motion for summary judgment.

## 2. *Civil Conspiracy.*

An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. Wise v. Southern Pacific Co., 35 Cal.Rptr. 652 (Cal.App. 1963); Bliss v. Southern Pacific Co., 321 P.2d 324 (Ore. 1958). Collins alleged that the respondents conspired with one another and with each or all of the prospective purchasers of the Reef Hotel to induce the prospective purchasers not to purchase or lease the Reef Hotel from Collins. The respondents, at that time, were First Federal and three of its officers, Dwyer, Wholey and Small. Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. *Wise,* 35 Cal.Rptr. at 665; *Bliss,* 321 P.2d at 328-329. If Dwyer, Small and Wholey were not acting as individuals for their individual advantage, no unlawful combination of persons would exist, upon which Collins could premise his claim of civil conspiracy. Thus, one of the material issues of fact regarding Collins' civil conspiracy claim for relief is whether Dwyer, Wholey and Small were acting as individuals for their individual advantage.[9]

Collins' response to the motion for summary judgment did not contain any facts which would suggest that the respondents Wholey, Dwyer and Small were acting as individuals for their individual benefit. In fact, Collins' amended complaint alleged that the respondents, at all material times, "acted in their representative, agency or employment capacity. . . ." Although an action for civil conspiracy does include a "state of mind" issue which is usually inappropriate for disposition by way of summary judgment, Collins has failed to show that he could produce the requisite quantum of evidence to enable him to prove that Wholey, Dwyer and Small were acting as individuals in their individual capacities. *See* Hahn, *supra.* Accordingly, the

---

[9]It is suggested that in order to prevent Collins from selling or leasing the Reef Hotel or to chill the foreclosure sale, Dwyer, Wholey and Small, as agents of First Federal, conspired with the prospective purchasers which Collins had procured. Collins, however, did not show by admissible evidence in his affidavits that specific material factual issues concerning his civil conspiracy claim must be resolved. *See* NRCP 56(e). Thus, the lower court was correct in granting summary judgment for respondents on this claim.

summary judgment dismissing appellant's claim for civil conspiracy is affirmed.[10]

### 3. *Wrongful Foreclosure.*

An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale. *See* Munger v. Moore, 89 Cal.Rptr. 323 (Cal.App. 1970); Spires v. Lawless, 493 S.W.2d 65 (Mo.App. 1973); League City State Bank v. Mares, 427 S.W.2d 336 (Tex.Civ.App. 1968). Therefore, the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised. Collins argues that because the respondents breached the loan agreement by charging interest in excess of the contractual rate (8.5 percent per annum) and the legal rate (12.0 percent per annum), he was not in default when the power of sale was exercised by First Federal. Thus, Collins concludes First Federal wrongfully foreclosed his interest in the Reef Hotel.

We have already held that Collins' usury claims concerning interest charged on undisbursed funds and certain ledger calculations must be remanded for trial. Additionally, we believe Collins' breach of contract claim survived the respondents' motion for summary judgment.[11] That claim is awaiting trial in the district court and is not now before this court. Because the material issue of fact in the wrongful foreclosure claim turns on whether the respondents breached the loan agreement by charging interest in excess of the legal and contractual rates,

---

[10]Since we have upheld the summary judgment dismissing appellant's claims for disparagement, intentional interference with prospective economic advantage and contractual relations, civil conspiracy, breach of fiduciary duty and chilling the sale, it is not necessary to decide with respect to those claims whether the summary judgment dismissing First Federal's officers Dwyer, Wholey and Small was proper. *See* Gordon v. Lynch, 77 Nev. 344, 364 P.2d 889 (1961).

[11]Although respondents' motion for summary judgment encompassed all of the claims for relief contained in Collins' Supplemental Complaint, the lower court's findings of fact and conclusions of law did not address Collins' breach of contract claim. Additionally, the lower court expressly determined that under NRCP 54(b), no just reason existed for delaying entry of a final judgment regarding the usury cause of action. In their brief respondents concede that the breach of contract claim was not adjudicated by the lower court's summary judgment.

the lower court erred in granting a summary judgment dismissing the wrongful foreclosure claim.[12] Thus, the lower court's summary judgment dismissing the wrongful foreclosure claim is reversed and the cause of action is remanded for trial along with the remaining breach of contract claim and the usury claims concerning interest charged on undisbursed funds and the alleged "bookkeeping errors."

SPRINGER, MOWBRAY, STEFFEN, and GUNDERSON, JJ., concur.

---

[12]Appellant's breach of contract claim appears to be premised on the same allegations which purportedly supported appellant's usury cause of action, *i.e.,* that the parties created two loans, that the late charges constitute a penalty, that certain "bookkeeping errors" by First Federal improperly increased the amount of interest charged appellant, that certain service fees actually constituted interest and that First Federal charged interest on undisbursed funds. We have decided that, as to all of the above-mentioned claims, except the interest on undisbursed funds and the "bookkeeping errors" claims, the lower court properly granted summary judgment in respondents' favor. Where an appellate court in deciding an appeal states a principle or rule of law, necessary to the decision, the principle or rule becomes the law of the case and must be adhered to on all issues in which the facts are substantially the same throughout the case's subsequent progress both in the lower court and on subsequent appeals. LoBue v. State ex rel. Dep't of Highways, 92 Nev. 529, 554 P.2d 258 (1976). Although we do not now decide the issue because the claim for breach of contract is not properly before us, *see generally,* Matyasovich v. Petricciani, 60 Nev. 366, 110 P.2d 206 (1941), and we have remanded the wrongful foreclosure claim, the doctrine of law of the case would appear to preclude appellant from premising the contractual and wrongful foreclosure claim on legal theories which are substantially the same as those decided in this appeal.