SIERRA NEVADA STAGELINES, INC., Appellant, *v.* RICHARD M. ROSSI and CHRISTINE (ROSSI) HANDY, Co-Executors of the Estate of the IOLANDA ROSSI, Deceased, and Co-Trustees of the ANGELO ROSSI Trust, Respondents.

No. 23214

March 30, 1995                    892 P.2d 592

*Woodburn & Wedge* and *Kirk C. Johnson* and *Lynne K. Jones,* Reno, for Appellant.

*Stephens, Knight & Edwards,* Reno, for Respondents.

## OPINION

*Per Curiam:*

The subject of this litigation is a two-year lease (the Lease) of real property and improvements located at 1675 Mill Street, Reno, Nevada, dated May 15, 1987. The lessors were Iolanda Rossi and The Angelo Rossi Trust. The lessee was New Grayline Scenic, with Keith C. Lindsay (Lindsay) signing as President. New Grayline Scenic was a fictitious entity. At the same time he executed the Lease as President of New Grayline Scenic, Lindsay also executed a personal guarantee on the Lease. The Lease prohibited assignment or subletting without the lessors' written consent.

Lindsay was the President of the New Grayline Corporation of Nevada (New Grayline Corp.), a corporation distinct from the fictitious New Grayline Scenic. On July 27, 1987, New Grayline Corp. filed an application to dissolve itself, which the Nevada Secretary of State granted on July 31, 1987. Also on July 27, 1987, New Grayline Corp. sold its assets to Arizona Southern. Included in the sale was an assignment of all of New Grayline Corp.'s "beneficial interest" in the Lease. Subsequently, New Grayline Corp., Sierra Nevada Stage Lines, Inc. (SNSL), and Arizona Southern entered into various agreements with one another, and filed some applications with the Public Service Commission to transfer certificates. The record reflects no written agreement between SNSL and the Rossis.

The disputed provision in the Lease stated that the lessors had the right to notify and require the lessee to remove a number of storage tanks from the premises. In approximately March and April, 1989, the Rossis, as lessors, made demand upon New Grayline Corp., Arizona Southern, and SNSL to remove the storage tanks. When no one removed the tanks, the Rossis removed the tanks at their own expense of $63,244.31.

On October 12, 1989, Iolanda Rossi, individually and as the Trustee of the Angelo Rossi Trust (the Rossis), filed a complaint against New Grayline Corp., Arizona Southern, SNSL, and

Lindsay, individually and as Trustee for New Grayline Corp. (Trustee Lindsay). The Rossis sought recovery for the breach of the Lease provision with respect to the cost of removal of fuel tanks. No party filed any claim against the original lessee, the fictitious New Grayline Scenic. SNSL, New Grayline Corp., Arizona Southern, Lindsay, and Trustee Lindsay subsequently filed answers. New Grayline Corp., Lindsay, and Trustee Lindsay also filed a cross-claim against SNSL, and SNSL filed a counterclaim. No party filed any motions for summary judgment, and the parties did not stipulate to a summary decision from the district court.

A non-jury trial was to be held on January 21, 1992. The district judge announced in court at the beginning of the proceeding that he would make a ruling to simplify the case and focus the issues. He stated that the Rossis were entitled to have the tanks removed and to be paid for that expense. He said the remaining question is to whom the Rossis might look for payment.

The district judge asked if there were any objections to the amount of money involved or if the defendants contested the legitimacy of the bills. The attorney for SNSL stated that it was unanticipated by the Rossis that there would be any environmental cleanup expenses, and he wanted to present evidence on that point. The district judge then stated that, from his review of the Lease and the deposition of Mr. Rossi that was on file, the environmental cleanup expenses were anticipated and that he was going to make a finding that they were reasonably foreseeable. SNSL's attorney also stated that it was not reasonably foreseeable that the environmental cleanup would cost $70,000.00 or $80,000.00 rather than $16,000.00, and that the lessee, whoever that was determined to be, did not bargain for an $80,000.00 tank removal bill.

The district judge determined that the issues of liability and indemnity among the defendants were not ready to go to trial. He continued the non-jury trial date and permitted additional discovery. However, he held to the position that judgment would be entered in favor of the Rossis and that the continued dispute would be among the defendants.

The Rossis submitted proposed findings of fact and conclusions of law to the district court. The defendants filed objections to the proposed findings of fact and conclusions of law. New Grayline Corp. objected to many of the findings, including the finding that the costs incurred by the Rossis for environmental cleanup were not foreseeable by the defendants. SNSL objected generally to the fact that the findings of fact and conclusions of law had been proposed when there had been no trial on the merits and specifically objected to many of the proposed findings, including the

findings that SNSL was a party to the Lease and assumed the obligation to remove the tanks under it. SNSL also asserted that the environmental laws requiring the removal of the tanks were not enacted when the Lease was entered, and any costs of complying with the environmental laws were not foreseeable.

An in-chambers hearing was held on March 30, 1992, concerning the entry of the proposed findings of fact, conclusions of law, and judgment. The district judge maintained its position that the Rossis were entitled to be paid in full. He then indicated that he was going to sign the proposed findings of fact, conclusions of law, and enter judgment against all the defendants. The findings of admitted and disputed facts stated that all of the defendants recognized their continued liability under the Lease, that Lindsay acted specifically on behalf of New Grayline Corp. and not New Grayline Scenic, that SNSL accepted the benefits of the Lease and thereby accepted all of the obligations, and that the cost of removing the tanks was not unforeseeable to the defendants. Judgment was then entered against each of the defendants, jointly and severally, for the total cost of removal of $63,244.31, plus financing costs, interest, court costs, and $40,865.40 in attorney's fees. A total liability of $128,429.24 was entered against the defendants.

The notice of entry of judgment was filed on April 8, 1992, and SNSL filed its notice of appeal on April 12, 1992. The remaining defendants in the district court have not appealed the ruling.

Because no motions for summary judgment were pending, the district court effectively entered summary judgment sua sponte in favor of the Rossis and against all of the defendants, including appellant SNSL. The district court did not take any evidence, nor did it allow SNSL to submit any affidavits or other documents in support of its position, and the court itself acknowledged that it did not know whether SNSL was liable to the Rossis under the Lease, as exemplified by the following statements: "I don't know who has the ultimate responsibility" and "I do think there is a question . . . as to who has to pay. " It is one thing for the parties to stipulate to the amount of damages; it is quite another for the court to impose liability for that amount on the defendants without hearing any evidence.

This court will not set aside the district court's findings of fact unless they are clearly erroneous, or no evidence supports the findings. Leonard v. Stoebling, 102 Nev. 543, 728 P.2d 1358 (1986). Upon a motion for summary judgment, all inferences are in favor of the non-moving party. Sawyer v. Sugarless Shops, 106

Nev. 265, 792 P.2d 14 (1990). Normally the non-moving party must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against him or her. Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 294, 662 P.2d 610, 618-19 (1983).

We know of no precedent that sanctions a district court's sua sponte ruling in this manner. SNSL is, in effect, the non-moving party on a motion for summary judgment. Had the Rossis moved for summary judgment, SNSL would have had an opportunity to submit affidavits and other documentation as support for its position. NRCP 56. SNSL and New Grayline Corp. disputed many of the findings of fact and the related law, including the following: privity, acceptance, waiver, the effect of the dissolution of New Grayline Corp., the question of whether there was a valid assignment, and whether the lessee was liable for environmental compliance expenses associated with the tank removal. Neither the district court nor the Rossis have alleged that SNSL has acted in bad faith or has pursued frivolous litigation. Thus, in view of the genuine issues of fact for trial, we conclude that the district court's grant of judgment sua sponte was erroneous.

Additionally, the district court's novel action in granting what amounts to summary judgment sua sponte is troubling to us. We recognize that the district court's laudable intention was to limit the cost and complexity of this litigation. One of a judge's duties is to "dispose of all judicial matters promptly, efficiently and fairly." Code of Judicial Conduct Canon 3(B)(8). However, promptness and efficiency must not be sought at the expense of fairness, the third element of Canon 3(B)(8). The commentary of Canon 3(B)(8) states, in part:

> In disposing of matters promptly, efficiently, and fairly, a judge must demonstrate due regard for the rights of the parties to be heard . . . . Containing costs while preserving fundamental rights of parties also protects the interests of witnesses and the general public.

Thus, a district court may not simply dispense with the adversary process when it senses the equities of the case are obvious. In Kinna v. State, 84 Nev. 642, 647, 447 P.2d 32, 35 (1968), we noted:

> Firmly embedded in our tradition of even-handed justice—and indeed its very cornerstone—is the concept that the trial judge must, at all times, be and remain impartial. So deeply ingrained is this tradition that it is now well settled

that the trial judge must not only be totally indifferent as between the parties, but he must also give the appearance of being so.

Although we are eager to activate plans to streamline litigation, we also acknowledge that the pursuit of justice is seldom economical and uncomplicated, and that any alterations or reforms must conform with notions of due process. While the attorneys for the defendants below could have been more assertive and articulate in pointing out to the district judge the issues of fact that needed to be tried on the merits, it is clear that the entry of any judgment before hearing evidence in this case was improper. Therefore, we reverse and remand this case to the district court for a trial on the merits.[1]

---

[1]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this appeal.