## PLITT v. SEVEN CORNERS REALTY, Inc.

### No. 8891.

United States Court of Appeals
District of Columbia.

Argued March 20, 1945.

Decided May 28, 1945.

Mr. Irvin Goldstein, of Washington, D. C., for appellant.

Mr. Jacob N. Halper, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

GRONER, C. J.

This is a suit to recover moneys alleged to have been usuriously exacted from appellee, Seven Corners Realty, Inc., by appellant Plitt. The case involves a loan of $15,000. A brief statement of the facts leading up to the challenged transaction follows:

Appellee, hereafter called "Realty Company," was organized April 12, 1941, under the laws of Delaware and its stock, thereafter issued, was wholly owned by Louis Burman and Eva Burman, his wife, who were respectively President and Secretary of the corporation. At that time the Burmans held an option or contract to purchase a lot of land in the District of Columbia. They purposed acquiring this land in the name of Realty Company, and planned to have Realty Company erect thereon a building which it would contract to lease to the Great Atlantic & Pacific Tea Company. The Burmans were then short some $15,000 or $16,000 of the amount necessary to carry through the project. Accordingly, on April 12, 1941 (the day of incorporation of Realty Company), they individually entered into a written agreement with appellant Plitt in Baltimore, whereby in consideration of $15,000 in cash to be advanced to them by him, they would cause Realty Company to execute its one-year note for $19,000 (to themselves), to be endorsed by themselves and, which, together with other collateral to be furnished by themselves, would be delivered to Plitt as security for the loan. The details of this arrangement were subsequently carried out through a title company in the District of Columbia, and in November, 1942, Realty Company, in the District, paid Plitt the full sum of $19,000, with interest at six per cent (6%) to that date, in discharge of its note. The result of this closing of the transaction was that Plitt received, then and theretofore, in addition to the principal sum loaned by him, the further sum of $5,648.24, to recover which this suit was brought, on the ground that the payment was in excess of the lawful rate of interest under District of Columbia laws.

After both sides had submitted evidence, each moved for a directed verdict. The District Judge, being of opinion, "on the undisputed facts that the transaction occurred in the District of Columbia," directed a verdict in favor of Realty Company and entered judgment for the amount sued for. Under the laws of Maryland a corporation may not avail of the usury laws, but under the laws of the District of Columbia it may. Accordingly, the case was argued here on the question whether the transaction was controlled by the laws of Maryland,[1] or by the laws of the District of Columbia.[2]

---

[1] Md.Code Ann. (Flack, 1939), Art. 23, § 129.

[2] D.C.Code 1940, §§ 28—2702, 28—2703.

As we have seen, an agreement for a loan was made in the office of Plitt's attorney in Baltimore, Maryland, and the agreement itself, which is a lengthy document of some ten printed pages, was entered into between Burman and his wife, who are residents of the District of Columbia, of the one part, and Plitt, of Maryland, of the other. The agreement recited the various transactions which were then proposed, viz.: acquisition of the tract of land by Realty Company, building of the store and parking lot, execution by Realty Company of a $19,000 second mortgage note to the Burmans, its assignment, with recourse, to Plitt and the additional assignment of various other securities of the Burmans to him to insure payment of the note when due. For all of this Plitt was to pay the Burmans $15,000. On April 14, 1941, the agreement was signed by Burman and his wife on the one part and by Plitt on the other, and it was endorsed below by Realty Company as follows:

"Seven Corners Realty, Inc., a Delaware corporation, hereby executes the foregoing memorandum for the purpose of evidencing its agreement to, and its execution hereby, of all the covenants and conditions provided therein to be performed by it in connection therewith."

An examination of the terms of the contract shows that the Burmans agreed that Realty Company would acquire the land, contract for the improvements thereon and assign the A. & P. lease to further secure the holder of the $19,000 note. There was no undertaking on Realty Company's part directly to Plitt. As it now appears, however, counsel agreed that the loan was for the benefit of Realty Company, and on its admission that it got Plitt's money—through the Burmans—and ultimately paid off the debt, by agreement of parties, the trial was allowed to proceed in the name of Realty Company as the proper party-plaintiff in the suit.[3] And on that basis it is submitted to us, appellant Plitt's position now being that the contract for the loan,—i. e., the contract between the Burmans and Plitt—with Realty Company's endorsement as quoted above—having been made in Maryland, the law of that State controls. But considered in that aspect, there is nothing in the Baltimore agreement between Plitt and the Burmans which will justify our holding that it was a contract for a loan between Realty Company and Plitt, for it was nothing of the kind. Realty Company made no contract or agreement to borrow money from Plitt at any time in Maryland, and its endorsement, in the form we have noted above, on the Maryland agreement between Plitt and the Burmans committed it to nothing more than to go forward with the Burmans' plan to have it acquire property in the District of Columbia and, when this was done, to execute and deliver to the Burmans, or one of them, a second mortgage note for $19,000. Realty Company's subsequent monetary obligation to Plitt therefore arose wholly out of the fact that Plitt later became the holder of its promissory note. This obligation was executed and delivered to Plitt in the District of Columbia, in consideration of money advanced to Realty Company by Plitt in the District of Columbia, and was secured by a second mortgage on District of Columbia realty. The obligation was presumably payable, and was actually paid, in the District. In such circumstances it is clear from their acts that the parties to this appeal, Plitt and Realty Company, transacted their bargain in the District of Columbia, and accordingly were governed by the law of the District of Columbia. It becomes unnecessary, therefore, to consider whether, as a matter of Conflict of Laws, the law of the place of contracting, the place of performance, or the law which the parties intended, is to control.[4]

---

[3] The original complaint was filed in behalf of Realty Company alone. Subsequently an amended complaint was filed in the name of the Burmans and Realty Company. After the opening statement of counsel for plaintiffs, there was a colloquy between the court and counsel, as a result of which the court directed the elimination of the Burmans as parties-plaintiff. The case thereafter proceeded in the name of Realty Company alone and was tried on the theory, as then stated by counsel for Plitt, that "the corporation went to Baltimore and arranged with Mr. Plitt * * * under the terms of which Mr. Plitt was to purchase from the corporation a note in the sum of $19,000, for which Mr. Plitt was to pay the corporation $15,000."

[4] An examination of the authorities indicates the inter- and intra-jurisdictional conflicts which the problem has provoked. See Beale, Conflict of Laws, § 332; Cook, Logical and Legal Bases of the Conflict of Laws, The Validity of Contracts, pp. 347–432; Restatement, Conflict of Laws (1934) §§ 311, 332–347; Note, Us-

If the factual theory on which the case was tried, and on which the parties agreed, is correct, it is at once apparent that Plitt got in the District of Columbia a $19,000 one-year six per cent (6%) note of Realty Company upon payment to it of only $15,000, with full notice of its usurious character. If the theory on which the amended complaint was brought is correct, then it just as certainly appears that Plitt bargained and got the usurious note from the Burmans, and received payment from them, in which case it would be of no consequence whether the initial bargain was made in Maryland or the District of Columbia, since in either place the law would have condemned the transaction as usurious. But the parties now agree that the loan transaction was between Realty Company and Plitt, and it being obvious, for reasons stated above, that any such transaction—both in its initiation and conclusion—occurred in the District of Columbia and not in Maryland, it follows that the judgment must be affirmed.

Affirmed.

ury and the Conflict of Laws (1928) 14 Va.L.Rev. 570; cf. Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 47 S. Ct. 626, 71 L.Ed. 1123; Washington Nat. Building & Loan Ass'n v. Pifer, 31 App. D.C. 434, 14 Ann.Cas. 734.