## BETTUM *v.* MONTGOMERY FEDERAL SAVINGS & LOAN ASSOCIATION, INC.

[No. 463, September Term, 1970.]

*Decided June 2, 1971.*

*Motion for rehearing filed June 28, 1971; denied September 13, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Beverly S. Pearson* for appellant.

*William H. Brain* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This is a contest between a mortgagor and his lending institution, in which the borrower who sought damages below for breach of contract and fraud, also contends that his $6\frac{1}{2}\%$ loan became usurious after it had been made. While he raises a multitude of questions, the borrower's principal contention is that he is now entitled to a recovery of the interest which he had paid under District of Columbia Code Title 28, § 3303. From a judgment for the lender for costs, the borrower has appealed.

In early 1966, the appellant, Leif L. Bettum, a retired employee of the General Services Administration, owned a house at 6403 9th Street, Northwest, in the District of Columbia, subject to an existing mortgage of about $6,400.00. At that time, because he had some unpaid doctors' bills, and because he was planning to build a house in Westmoreland County, Virginia, for his retirement, he was more than receptive to a solicitation which he received by mail from one David Sherman, whom Bettum identified as a "loan arranger."

In response to the solicitation, Bettum went to Sherman's office, saw one of Sherman's assistants, and completed an application for a mortgage loan of $11,500.00 from Montgomery Federal Savings and Loan Association, Inc. (Montgomery Federal). A short time thereafter, three men came to Bettum's house, and identified themselves as Montgomery Federal's loan committee. After examining the house, according to Bettum's testimony, the committee said that they could not approve the loan because the house "was a warehouse, not a residence." Bettum explained that he had been accumulat-

ing materials and fixtures for the house which he pro-
posed to build in Virginia.

A member of Montgomery Federal's loan committee
testified as regards the condition of Bettum's house:

"The structure itself, both inside and out had
not been painted or papered for at least, I would
say, fifteen or twenty years. Paper was com-
ing off the wall, the paint inside was all peel-
ing; the paint outside [on] all the windows and
cornices was peeling and in very, very poor con-
dition.

"I would say it is in bad condition to the point
that not one house in a hundred is in such bad
decorative condition and the same thing would
apply to the trash. I have never seen so much
trash in the basement in all my 35 years of ap-
praising.

"THE COURT: What was the nature of what
you call 'trash'?

"THE WITNESS: Newspapers, many, I think
it was clocks, and all sorts of hardware, piles of
trash, five and six feet tall, so that the whole
basement was relegated [to] a narrow corridor
about a foot wide and trash was literally up
over your head which was in extremely hazard-
ous condition and very dangerous for the wel-
fare of the occupant. And I told him [Bettum]
we would not make a loan for the house in such
poor condition."

The witness continued:

"* * * I told David Sherman we will not
make a loan on the house in such deplorable
condition. Dave Sherman prevailed upon us to
go ahead and make the loan with the promise
that Mr. Bettum would do the necessary work
to bring it up to good condition. And we agreed,
provided, of course, and with the understand-

ing that he would do the work and we withheld $1,500 to assure us that he would do the work."

In due course, Montgomery Federal issued a loan commitment for a 6½% loan of $11,500.00 for almost 20 years, repayable in monthly installments of $86.25 subject to a "loan placement fee" of $345.00 and a withholding of $1,500.00 "pending redecoration." The commitment was accepted by Sherman, as Bettum's agent. The court below admitted the commitment letter as evidence that Bettum was chargeable with knowledge of its contents, rather than as proof of Sherman's authority to sign it, possibly because Bettum testified that he first met Sherman at the closing.

Settlement was had on 18 February 1966 at the office of Lyon, Roache & Horan Title Settlements, Inc., in Washington. From the mortgage loan of $11,500.00 there were deducted:

| | |
|---|---|
| Amount necessary to satisfy existing mortgage: | $6,457.10 |
| David Sherman: brokerage and "service" fees | 450.00 |
| Montgomery Federal, | |
| Placement fee | 345.00 |
| Appraisal fee | 50.00 |
| Credit report | 10.00 |
| Insurance premium (5 years) | 89.00 |
| Interest to 1 March 1966 | 24.92 |
| Eight months' taxes | 106.52 |
| Miscellaneous expenses, | |
| Examination of title and conveyancing | 146.25 |
| Amount withheld "pending redecoration" | 1,500.00 |
| | $9,178.79 |

so that the balance of the proceeds of the loan payable to Bettum was $2,321.21. Sherman was present at the closing, as was Bettum, who signed the settlement sheet. On one copy of the settlement sheet is a notation, signed

by Sherman, apparently referring to the amount withheld, which says, "Mr. Bettum, this is just a formality, in two weeks you will have your check." The court below found as facts that this had been added after settlement, that Sherman was Bettum's agent and not the agent of Montgomery Federal, and concluded, as a matter of law, that Bettum had accepted the condition on which the loan was made when he signed the settlement sheet.

On 8 March 1966, a little more than two weeks after settlement, Montgomery Federal wrote to Bettum offering to transfer to Bettum's savings account the $1,500.00 which had been withheld "pending redecoration" provided that Bettum would agree to pledge the account as additional security for the repayment of the loan "until such time as the necessary work has been completed on the property." Bettum did not reply.

Bettum, commencing in March, 1966, made regular monthly payments, first in the amount of $102.00, then in the amount of $103.00, and finally in the amount of $109.00, to cover monthly mortgage payments in the amount of $86.25, and one-twelfth of his taxes and insurance premiums. On 5 December 1968, when Montgomery Federal realized that Bettum was not going to do the work, the Association credited the $1,500.00 it had been holding in reduction of the unpaid balance of principal, without reducing the amount of the monthly payments. No issue was made of this, compare *Hadjis v. Anderson*, 260 Md. 30, 271 A. 2d 350 (1970). The payments were apparently current in November 1969, when Bettum brought suit.

Although both parties seemingly concede that the controversy is controlled by the law of the District of Columbia, where the mortgaged property is located and the loan was made, *Plitt v. Seven Corners Realty*, 149 F. 2d 832 (D.C. Cir. 1945), Bettum largely rests his case on our opinion in *B. F. Saul Co. v. West End Park North, Inc.*, 250 Md. 707, 246 A. 2d 591 (1968) which inter-

preted Chapter 453 of the Laws of 1968, now Code (1957, Repl. Vol., 1970 Cum. Supp.) Art. 49, §§ 1-11, part of which is sometimes referred to as Maryland's "Truth in Lending" Act. This reliance is hardly justified, except by way of analogy, since the Act applies to transactions in Maryland, and additionally did not become effective until 1 July 1968, more than two years after Montgomery Federal made its loan.

Even if we were to apply the rationale of *B. F. Saul* to the facts at hand, the effective rate of interest would not be usurious. *B. F. Saul* makes it clear that funds escrowed in advance for the payment of taxes and insurance premiums and fees paid to persons other than the lender (in this case, Sherman) are not to be taken into account in the calculation of the effective interest rate. We see no reason why the concept which applies to advance payments of property expense could not be extended, in an appropriate case, to the retention by the lender of a reasonable portion of the loan proceeds to assure the performance of a condition to which the borrower has agreed, when such performance remains solely within the power of the borower. Bettum could have terminated the escrow at any time by doing the "redecoration" which Montgomery Federal wanted, or alternatively could have agreed to Montgomery Federal's suggestion that the $1,500.00 be deposited in his savings account. He chose to do neither, and as we see it, brought his situation squarely within the rule of *Atlantic Life Ins. Co. of Richmond, Virginia v. Wolf,* 54 A. 2d 641 (Mun. Ct. of App. D.C. 1947), which holds that a loan not otherwise usurious will not be made so by the borrower's own act.

Turning now to Bettum's contention that Code, Art. 49, §§ 1-11, as interpreted by *B. F. Saul Co. v. West End Park North, Inc., supra,* 250 Md. 707 is controlling, and conceding, *arguendo,* that it is, Bettum still could not prevail.[1] We have earlier indicated that even under *B. F.*

---

1. While the point was not made by the parties, it would appear

*Saul,* funds escrowed in advance for the payment of taxes and insurance premiums play no part in the calculation of the effective rate of interest, nor do amounts expended for title examination or conveyancing. What would be taken into account is the loan placement fee of $345.00 exacted by Montgomery Federal, together with the appraisal fee of $50.00 and the charge of $10.00 for a credit report, which we shall assume, for purposes of this opinion, were not paid by Montgomery Federal to others.

If the total of these items, $405.00, is deducted from the face amount of the loan, the payment of interest at $6\frac{1}{2}\%$ on $11,500.00 means that the yield on the net figure of $11,095.00 may be interpolated from Financial Publishing Company's "Prepayment Mortgage Yield Tables for Monthly Payment Mortgage" (3d ed. 1968). The effective yield is approximately 6.96%, well within the 8% limit imposed by District of Columbia Code § 28-3303.

Finally, Bettum contends that the judgment should be reversed because he was denied the right of trial by jury in a civil proceeding, a right guaranteed by Maryland Constitution, Art. XV, § 6. We have held that the right to a jury trial may be subjected to reasonable regulation and that a local rule of court requiring that an affirmative written election for a jury trial be made at the time of the filing of the first pleading does not offend the constitutional guarantee, *Houston v. Lloyd's Consumer Acceptance Corp.,* 241 Md. 10, 215 A. 2d 192 (1965), a limitation which has been made applicable to all courts by Rule 343, which became effective before Bettum brought suit. *Segal v. American Casualty Co. of Reading, Pennsylvania,* 250 F. Supp. 936 (D.Md. 1966). While it is true that Bettum filed his declaration in proper person

---

that District of Columbia law is not substantially at variance with *B. F. Saul,* see *Industrial Bank of Washington, Inc. v. Page,* 249 F. 2d 938 (D. C. Cir. 1957) ; *Brooks v. Auto Wholesalers, Inc.,* 101 A. 2d 255 (Mun. Ct. of App. D. C. 1953) ; *Holcombe v. O'Sullivan,* 93 A. 2d 96 (Mun. Ct. of App. D. C. 1952) ; *Bowen v. Mount Vernon Savings Bank,* 105 F. 2d 796 (D. C. Cir. 1939).

he is nonetheless charged with knowledge of the law and the rule of court.

*Judgment affirmed; costs to be paid by appellant.*