TRI-COUNTY FEDERAL SAVINGS & LOAN
ASSOCIATION OF WALDORF *v.*
DEVEROE R. LYLE ET UX.

[No. 115, September Term, 1976.]

*Decided April 5, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, DIGGES, LEVINE and ORTH, JJ.

*Joseph Ernest Bell, II,* for appellant.

*George E. Meng,* with whom were *Pitrof & Starkey* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

We granted certiorari in the case of *Lyle v. Tri-County Fed. S. & L. Ass'n,* 33 Md. App. 46, 363 A. 2d 642 (1976), in order that we might review the result reached by the Court of Special Appeals in what may well be on its facts a case of first impression in Maryland. The question posed by the case is whether a construction loan made by Tri-County Federal Savings and Loan Association (Tri-County) to Deveroe R. Lyle and Florence P. Lyle, his wife (the Lyles), was made under conditions which rendered it in part usurious.

We adopt the statement of facts contained in the opinion of the Court of Special Appeals:

> "The Lyles desired to construct a home in Prince George's County.[1] They obtained a loan commitment from Tri-County. They executed a note [[on 11 April 1974]] to Tri-County in the amount of $60,000 bearing interest at 8%. Payment of the note was secured by a deed of trust of the same date which referred to the note. On the same day a loan agreement was executed. It recited that the Lyles owned a lot 'upon which said land [Tri-County] ha[d] [t]heretofore agreed to loan the sum of . . . $45,000.00 . . . to be secured by the Deed of Trust [t]hereinabove mentioned, and the said money to be so loaned to be used in improving the said land by the erection thereon of a dwelling. . . .'

---

1. Although Mr. Lyle is a builder, the house which he proposed to construct was to be a residence for his wife and himself.

The dwelling was to be completed within 12 months. Provision was made for payment by Tri-County of the $45,000 in 9 installments as work progressed. At settlement Tri-County's check in the amount of $60,000 was presented to and endorsed by the Lyles. The settlement sheet reflects disbursal of $15,000 from the loan proceeds to the seller of the lot. The remaining balance of $45,000 of the loan proceeds was paid over to Tri-County. The president and 'managing officer of Tri-County' testified that this sum 'was deposited to an account maintained by Tri-County at the Bank of Southern Maryland.' He said it went into that bank 'along with all the other moneys that was taken in by Tri-County on April 15th, 1974, which totaled $82,158.96.' No escrow account was maintained. Tri-County did maintain a record of 'loans in process' and the balance kept on hand in its account was said to always be equal to or greater than the total amount committed to loans. The account was used for such things as payment of employees' salaries and other monthly expenses of Tri-County. Also collected at settlement and paid over to Tri-County was $60 for an appraisal fee, $10 for a credit report, and $90 for nine inspection fees in accordance with the schedule in the loan agreement. The credit report and appraisal fees were disbursed by Tri-County to other parties. The house was not constructed as planned and the $90 sum for inspection fees ultimately was returned to the Lyles. The Lyles abandoned their construction plans and settled with Tri-County on September 24, 1974, repaying the $15,000 at that time plus $573.29 [[2]] accrued interest on the full $60,000. At the same time they were given credit for the $45,000 retained. Interest had been paid in the

---

2. During the period 25 May-22 August 1974, $1,600.00 had been paid in monthly installments, so that the total of interest payments on the $60,000.00 loan seems to have been $2,173.29.

interim in accordance with the schedule originally agreed upon. This interest was at all times on the full $60,000." (single brackets in original; double brackets ours)

The Lyles brought suit in the Circuit Court for Charles County, alleging that the $60.00 appraisal fee and the $10.00 fee for a credit report, neither of which was returned to the Lyles, and the eight per cent interest charged from 11 April 1974 to 24 September 1974 on the $45,000.00, an amount never subject to the Lyles' control and never utilized by them, rendered the loan usurious and entitled them to recover from Tri-County, by virtue of the provisions of Maryland Code (1957, 1972 Repl. Vol.) Art. 49, § 8, the greater of three times the charges and interest at a rate in excess of eight per cent or $500.00 and claimed $5,631.54.[3]

Returning to the opinion of the Court of Special Appeals:

"The trial judge found the fees 'not [to be] a payment of interest over and above the eight per cent allowed by law.' He noted that the $45,000 'was deposited in the bank, admittedly deposited with other funds,' and that the testimony of the president of Tri-County 'was that there is a general ledger which controls, which they use to control the funds that are put in the bank and that they retain sufficient funds in several banks to cover all outstanding construction loans which are in progress . . . at any given time.' He concluded:

'So the Court, gentlemen, feels that the commitment was made, the testimony shows that the funds were available for the benefit of Mr. and Mrs. Lyle, in

---

3. A similar provision appears in Maryland Code (1975), Commercial Law Article § 12-114 (a) (1). The amount claimed by the Lyles' original declaration was three times $1,633.83; the amended declaration sought three times $1,877.18. According to our calculations, simple interest at eight per cent on $45,000.00 for 166 days would be $1,637.25, which is roughly comparable to that implicit in the original ad damnum. We are unable to determine from the record the derivation of the additional $243.35 sought in treble damages even if the $190.00 fees were included.

accordance with their agreement. They agreed that the funds were to be retained by the lending institution in accordance with their agreement and there is nothing that I can find in any statute in the State of Maryland, which prevents the individual from entering into this agreement authorizing the lending institution to make such disbursal of funds as, for which they had signed the deed of trust.

'The Court, for that reason, will grant the motion [of Tri-County to dismiss] and will enter a verdict, enter a judgment nisi in favor of the defendant.' "

The Court of Special Appeals concluded that the credit appraisal and inspection fees played no role in the alleged usury and we agree. The $90.00 inspection fee was returned to the Lyles when they determined not to proceed with construction. The appraisal fee and the fee for the credit report were paid by Tri-County to others, and under the rule of *B. F. Saul Co. v. West End Park*, 250 Md. 707, 246 A. 2d 591 (1968), a fee or charge collected by the lender and paid to others is to be excluded from the computation of interest by virtue of Code (1957, 1972 Repl. Vol.) Art. 49, § 1 (b) (6) (C).[4] *See also Equitable v. Insurance Comm'r*, 251 Md. 143, 148, 246 A. 2d 604, 607 (1968).

The interest charged on the $45,000.00 of the loan proceeds retained by Tri-County is an entirely different matter, however. At no time was this under the Lyles' control, or under their partial control, as it might have been had it been held in escrow by others for their account, even though subject to restrictions. It was deposited in Tri-County's general account, and remained there from the day the Lyles signed the note until repayment was made. The cases of *Building & Loan Ass'n v. Lumber Co.*, 168 Md. 199, 178 A.

---

4. In force at the time the loan was made. A somewhat similar provision is found in Code (1975), Commercial Law Article §§ 12-101 (i) and 12-105 (c) (3).

214 (1934), *aff'd on rehearing* (1935), and *Loan & Savings Ass'n v. Tracey*, 142 Md. 211, 120 A. 441 (1923), relied on by Tri-County, are clearly inapposite. In both cases, the sums borrowed were credited to the mortgagors, to be released on certain conditions. *Bettum v. Mont. Fed. S. & L. Ass'n*, 262 Md. 360, 277 A. 2d 600 (1971), is similarly distinguishable, because the statute with which we are here concerned did not become effective until two years after the loan was made in that case.

*See also* 45 Am.Jur.2d, *Interest and Usury* § 113 at 100 (1969), relied on in part by Tri-County:

> "If as a condition of making a loan the borrower is required to leave part of the money on deposit with the lender, the transaction is usurious if the interest paid for the loan amounts to more than legal interest on the sum actually available for the use of the borrower. If, however, the agreement for a loan contemplates that the entire amount shall be available to the borrower at once, the mere fact that he leaves a part thereof with the lender for a time, or that a brief delay in paying it over to him occurs, does not make the transaction usurious in the absence of a corrupt intent to evade the law against usury."

In *Andrews v. Poe*, 30 Md. 485, 487 (1869), our predecessors said,

> "Now, if there be a principle clearly established by judicial decision, it is that the laws against usury ought to be strictly enforced. Such, indeed, has been the uniform course of decisions under statutes penal in their character, and by which the usurious contract was wholly avoided, or the usurer visited with the penalties of the law; and there is certainly no reason why, in this State, the law should be less rigidly enforced, where no contract is set aside or penalty imposed, but the excessive interest alone forfeited. It has so happened, from the earliest

times to the present, that every device and shift which the wit of man could suggest, have been invoked to exempt contracts for illegal interest from the operation of the law, but courts have not hesitated, in every case, to tear off, with unsparing hands, the mask under which it has been attempted to conceal the usury, and to declare the true nature of the transaction."

In *Plitt v. Kaufman,* 188 Md. 606, 611, 53 A. 2d 673, 675 (1947), Judge Delaplaine, speaking for the Court, said:

"This Court has held that no device or subterfuge of the lender will be permitted to shield him in taking more than the legal interest on a loan. In whatever part of the transaction usury may lurk, or in whatever form it may take, or under whatever guise the lender may attempt to evade the law, the court will seek to ascertain what the contract actually was between the parties and give the debtor relief. *Andrews v. Poe,* 30 Md. 485 [(1869)]; *Brenner v. Plitt,* 182 Md. 348, 34 A. 2d 853 [(1943)]."

When Code (1957, 1972 Repl. Vol.) Art. 49 was amended by Chapter 453 of the Laws of 1968, Section 3 provided in part that:

"Interest may be charged not in excess of the rate of six per cent (6%) per annum simple interest *on the unpaid balance,* except that interest may be charged at the rate not in excess of eight per cent (8%) per annum simple interest *on the unpaid balance* under an agreement in writing between the lender and the borrower." (emphasis added)

Section 6 of the same Article provided that "Usury is the collection by a lender of either interest or other charges in amounts greater than allowed by this article" and Section 8 permitted the recovery of the greater of $500.00 or three times the excessive interest.

We are entirely in accord with the concept adopted by the

Court of Special Appeals, that whether a loan is usurious depends on the collection of interest on the unpaid balance at a rate greater than that permitted by statute, and that the balance clearly means that which is owed by a borrower to a lender. Webster's New International Dictionary of the English Lanuage 206 (2d ed. 1949) defines balance as "An equality between the sums total of the two sides of an account," or alternatively as "The excess on either side, or the difference between the two sides, of an account."

The concept of the collection of interest on an unpaid balance of a loan makes this case distinguishable from those involving the imposition of a commitment fee for an undertaking to lend money at some future date, *see Goldman v. Connecticut General Life Insurance Company,* 251 Md. 575, 248 A. 2d 154 (1968) and *Ehlen v. Selden,* 99 Md. 699, 59 A. 120 (1904), holding that there can be no recovery of a commitment fee when the contemplated borrowing is never consummated.

Here the "unpaid balance" referred to by Art. 49, § 3 was the $15,000.00 owed by the Lyles to Tri-County; the $45,000.00 was a balance beyond their control, to which they had no access until they commenced the construction of their house. So long as it remained in the sole control of Tri-County, and was not utilized by the Lyles, the imposition of the interest charged was usurious, because the $45,000.00 was not and could not be a part of the unpaid balance of the loan to the Lyles.

> *Judgment of the Court of Special Appeals affirmed; case remanded to the Circuit Court for Charles County for entry of judgment consistent with this opinion; costs to be paid by appellant.*