Haskell **SHELTON** and Joy S. Shelton, Plaintiffs,

v.

**MUTUAL SAVINGS AND LOAN ASSOCIATION, F.A., a federal savings and loan association, Defendant.**

**Civ. A. No. 89–CV–10093–BC.**

United States District Court, E.D. Michigan, N.D.

May 24, 1990.

John G. Gleeson, Harvey, Kruse, Westen & Milan, P.C., Detroit, Mich., for plaintiffs.

Carson C. Grunewald, Bodman, Longley & Dahling, Detroit, Mich., for defendant.

## OPINION AND ORDER

ROSEN, District Judge.

Presently before the Court is the Defendant's Motion for Summary Judgment. The parties filed briefs and appeared for oral argument before the Court on April 12, 1990.

### I. FACTS

Plaintiffs, Haskell Shelton and Joy S. Shelton, are husband and wife who borrowed approximately $108,000.00 from the Defendant, Mutual Savings and Loan (the "Bank"). The rate of interest was approximately 10.4 % a.p.r., repayable over 15 years in 180 monthly installments, and the loan was secured by a first mortgage on the Plaintiffs' home. This new loan refi-

nanced an existing loan and mortgage on their residence.

The gravamen of the Plaintiffs' first amended complaint is that the Bank charged Plaintiffs interest during the period from December 22, 1988, which was the time that the Plaintiffs executed their note and mortgage, through December 28, 1988, which was the date that the loan was actually closed and the proceeds from the loan were disbursed by the Bank. During this period, pursuant to Regulation Z of the federal banking laws, 12 C.F.R. § 226.23, the Plaintiffs had a unilateral right to rescind the loan agreement. The Plaintiffs claim that the Bank had no right to charge interest during the 3–day rescission period nor even, in fact, during any period until the loan proceeds were actually disbursed by the Bank.

There is no dispute over the fact that the amount by which these Plaintiffs claim they have been damaged is $184.50, and the Court notes that the fact that this is a relatively small amount is not in any way an influence upon the Court's view of the importance of these proceedings.

According to the deposition testimony of Plaintiff Haskell Shelton, which was taken on July 18, 1989, Plaintiffs were informed by the Bank at their December 22, 1988 closing that the interest was being charged on the new loan starting effective December 22, 1988. The following colloquy took place in the deposition:

Q: Is this line 901 something that Mr. Lovely [the Bank's employee and the closing officer] went over with you at the time of this matter on December 22 when you and your wife were there with him?

A: Yes, sir. I recall that vividly.

Q: Tell me what you recall.

A: As he was explaining the items, he was very careful to explain each of the items. He came to that and stated that that was the interest for that period. I said, "Wait a minute. I'm not going to receive the money until the date that we actually close on December 28, 1988. How can you charge me interest during the rescission period when I haven't actually received the money?" I told him, "Dave, that's wrong."

Q: Did you say anything else?

A: No, sir. I waited for his reply.

Q: What did he reply?

A: He looked kind of sheepish and he said, "I know. I've talked that over with the people at the Bank, and we do it as a matter of policy for all of our customers."

Q: Did you say anything else?

A: I said, "Whose policy is this?" And he told me it was Mr. Bruce Cook's policy, and he gave me Mr. Cook's telephone number, wrote his name down.

Q: Who is Mr. Cook?

A: Apparently he's either the president or the chairman of the board of Mutual Savings and Loan.

Q: Did you know at the time who he was?

A: No, sir, I never heard his name.

Q: Did Mr. Lovely tell you who he was?

A: Seems like he did. It's one of those, either president or chairman of the board of Mutual. I believe he told me. I'm not positive about that.

Q: Did either you or Mr. Lovely have anything further to say about the subject?

A: I asked him at the time—I said, "Well, if you can charge me interest before I receive the money and we're not going to close until December 28, where are the charges listed for December 25, 26, and 27?" And he explained to me at that time that the charges were not contained in the settlement statement because those charges would be part of my monthly payment which was due on January 24, 1989.

\* \* \* \* \* \*

Q: Is there anything else that you remember Mr. Lovely or you said in this conversation about that interest from December 22 to 24 or from December 22 to December 28?"

A: I expressed the idea that I thought charging me interest for that time period was wrong, and I expressed the opinion that I shouldn't be charged interest during the time period when I had not received the money.

Q: Did you threaten to sue at that time?

A: Yes, I did. I told him that I intended to see a lawyer.

(Haskell Shelton deposition, pp. 72–74).

Despite this conversation, both Plaintiffs went ahead on December 22, 1988 and signed the note and the mortgage and did not exercise their right to rescind the loan transaction despite acknowledging their "Notice of Right to Cancel" on December 22, 1988. Plaintiffs then ultimately proceeded to final closing on December 28, 1988, and paid the disputed interest.

Plaintiffs claim that others were similarly injured by the Bank's conduct (which, the Court notes, appears to be supported in some deposition testimony by the Bank officer) and they have brought this case as a class action. Plaintiffs have filed a motion to certify the class as well as an emergency motion to certify the class. The court has deferred the hearing on that motion pending this decision.

The jurisdiction of this Court is based upon 28 U.S.C. Sections 1337 and 1335 and 15 U.S.C. Section 1640(e); the basis for this complaint's being in federal court then is federal question jurisdiction.

## II. PLAINTIFFS' CLAIMS

Plaintiffs' claims, as set forth in the Plaintiffs' first amended complaint, can be summarized as follows:

Count I: Plaintiffs claim that the Bank's conduct in charging interest before the loan proceeds were disbursed violates the National Housing Act, 12 U.S.C. Section 1730g, in that the Bank "charged, took, and received both a greater rate and a greater amount of interest permitted to a federal savings and loan association by 12 U.S.C. Section 1730g." (Quoting from Count I of Plaintiffs complaint).

In Count II, the Plaintiffs claim that the Bank's collecting interest during the 3–day rescission period violated the federal Truth in Lending Act and the regulations promulgated thereunder, including Regulation Z. The theory here seems to be that the Bank did not properly disclose that a portion of the interest that was charged from December 22, 1988 to December 28, 1988 was included in and a part of the "finance charge." The Plaintiffs also allege in Count II that the Bank's failure properly to document and disclose the interest charges violated 15 U.S.C. Section 1638(a), and the regulation thereunder, 12 C.F.R. 226.18, which would thereby entitle the Plaintiffs to damages.

In Count III, Plaintiffs claim appears to be based purely on state law. Plaintiffs allege that the Bank violated the Michigan usury statute, M.C.L. Sections 438.31c(2) and (9), by charging interest before the loan proceeds were disbursed. Plaintiffs also allege that interest was charged in violation of common law.

In Count IV, the Plaintiffs allege a constructive fraud, and they allege that the Bank's conduct in charging interest amounted to overreaching and unconscionable conduct which violated federal statutes and regulations and state statutes and public policy, and allowed the Bank to receive an unmerited benefit. It is unclear to the Court how this count differs from the other counts in its factual basis and how it is not simply cumulative.

In Count V, the Plaintiffs allege active fraud in that the Bank, they allege, had a duty to disclose the fact that it was charging interest during the predisbursement period and that charging such interest was impermissible and illegal. Plaintiffs further allege that by failing to disclose this, the Bank actively misled its customers, and the Bank's misrepresentation and/or silence caused mortgagors to enter into loan agreements under the belief that the Bank was charging, collecting, and retaining only permissible and legal amounts of interest. It is unclear to the Court whether these Plaintiffs would have standing to bring

those claims, and the Court will address these issues below.

In Count VI, the Plaintiffs allege that the Bank's failure to disclose that it was illegally charging interest also violated the Michigan Consumer Protection Act, M.C.L. Section 445.901, *et seq.*

## III.  BANK'S DEFENSES

The Bank filed its motion for summary judgment on October 23, 1989.  In its motion, the Bank argues that the Court must dismiss Counts I and III of the Complaint because neither Michigan law, M.C.L. Section 438.31c(2) or (9), nor federal law, 12 U.S.C. Section 1730g, forbids the Bank from charging interest before the loan proceeds were disbursed.  In the alternative, the Bank argues that, to the extent Michigan law might prohibit such accrual of interest, Michigan law is preempted by Section 501 of the United States Depository Institutions Deregulatory and Monetary Control Act of 1980, specifically 12 U.S.C. Section 1735f–7a, and the regulations promulgated under that section.

With respect to Count II, the Bank argues that it did make certain written disclosures to the Plaintiffs that satisfied all the requirements of the Federal Truth-in-Lending Act.  The Bank claims that it furnished the Plaintiffs, before the December 22, 1988 closing, with a good faith estimate of settlement costs and a written itemization of the transaction, the latter of which revealed the accrual of interest in the predisbursement period.  There is no dispute as to this fact.  The Bank argues that these written disclosures provided all that was required by the federal Truth–in–Lending Act and by the regulations thereunder.  The Bank also argues that, as a matter of law, nothing in the Truth-in-Lending Act forbids the Bank from charging interest before the loan proceeds are disbursed.

The Bank goes on to argue that the written disclosures plus the oral disclosures that were made to the Plaintiffs at the December 22, 1988 closing were sufficient to inform the Plaintiffs that interest was accruing from December 22, 1988, so as to comply with the Michigan Consumer Protection Act.  In support of its motion, the Bank attached the portion of the deposition transcript of Plaintiff Haskell Shelton from which the Court has quoted above.  The Bank therefore argues that there are no genuine issues of material fact, and it is entitled to summary judgment as to Count IV.

The Bank further contends, however, that M.C.L. Section 445.904(1)(a) renders the provisions of the Michigan Consumer Protection Act inapplicable to the Bank's conduct anyway.

Finally, the Bank argues that Plaintiffs' claims of constructive and actual fraud are redundant and undermined by the Plaintiff's own deposition testimony.

## IV.  ISSUES FOR DECISION

The Court finds that neither the Defendant Bank nor the Plaintiffs have completely framed the issues that must be decided by the Court, and therefore the arguments in both briefs are at points at variance with the statutes upon which the Plaintiffs base their claim.  The Court therefore will frame the issues as follows:

1.  Does 12 U.S.C. Section 1730g prohibit the Bank from charging interest before the loan proceeds are disbursed?

2.  Does either M.C.L. Section 438.-31c(2) or (9) prohibit the Bank from charging interest before the loan proceeds are disbursed?

3.  Does common law prohibit the Bank from charging interest before the loan proceeds are disbursed?

4.  Even if M.C.L. Sections 438.31c(2) and (9) and Michigan common law do proscribe the Bank's charging interest before the loan proceeds are disbursed, does 12 U.S.C. Section 1735f–7a preempt this state law?

5.  Does any section of the federal Truth–in–Lending Act prohibit the Bank from charging interest before the loan proceeds are disbursed?

6.  Did the Bank comply with the written disclosure requirements of the Truth–in–Lending Act?

7. Did the Bank comply with the disclosure requirements of the Michigan Consumer Protection Act?

8. Does M.C.L. Section 445.904(1)(a) preclude application of the Consumer Protection Act to the Bank's conduct in this case?

9. Is there any genuine issue of material fact precluding summary judgment on the Plaintiffs' claims for constructive or actual fraud?

## V. DECISION AND ORDER

Although these issues were not fully addressed at oral argument, they were briefed by both the Plaintiffs and the Defendant Bank.

■ First, the Court will address whether there is some violation of common law by the Bank. The Plaintiffs argue that the Bank's charging interest on the refinancing loan before the proceeds were actually disbursed violated common law, citing *Lyle v. Tri–County Federal Savings & Loan Ass'n of Waldorf,* 33 Md.App. 46, 363 A.2d 642, *aff'd,* 280 Md. 69, 371 A.2d 424 (1977); *Ceco Corp. v. Steve's Sash & Door Co., Inc.,* 714 S.W.2d 322, 325 (Tex.App.1986). However, it is important to note that neither of these cases were decided under common law principles, but rather interpreted the usury statutes of Maryland and

Texas, respectively. Thus, the Court finds that these cases are inapplicable in the instant case since neither party argues that the usury statutes of any state other than Michigan are applicable here. Without more, the Court cannot hold that the Bank's actions in the instant case violated any common law to which it has been cited. In fact, the Court has independently found no other common law—federal common law or Michigan common law—upon which it can rely.

■ Secondly, the Plaintiffs argue that the Bank's charging interest before the loan proceeds were disbursed violated Section 414 of the National Housing Act, 12 U.S.C. Section 1730g.[1] They argue, in essence, that Section 1730g incorporates the provisions of both common law and the Michigan usury statute. As discussed above, the Court finds no common law that applies to the Bank's conduct.

Further, the Plaintiffs argue that Section 1730g incorporates the Michigan usury statute, M.C.L. Section 438.31c(9). The Court believes that this is incorrect. The Court agrees with the interpretation of that statute set forth in the case of *Gavey Properties/762 v. First Financial Savings & Loan Ass'n,* 845 F.2d 519, 520–521 (5th Cir.1988). In that case, the Fifth Circuit

1. Section 1730g provides as follows:
   **1730g. Insured savings and loan associations**
   **(a) Interest rates**
   If the applicable rate prescribed in this section exceeds the rate an insured institution (which, for the purpose of this section, shall include a Federal association the deposits of which are insured by the Federal Deposit Insurance Corporation) would be permitted to charge in the absence of this section, such institution may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill or exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such institution is located or at the rate allowed by the laws of the State, territory, or district where such institution is located, whichever may be greater.

   **(b) Interest overcharge; forfeiture; interest payment recovery**
   If the rate prescribed in subsection (a) of this section exceeds the rate such institution would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than that prescribed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from the institution taking or receiving such interest.
   15 U.S.C. Section 1730g.

decided that Section 1730g limits the interest rate which a federally insured savings and loan association may charge to its customers. In that case, the Fifth Circuit stated:

> We interpret section 1730g(a) to allow a federally insured savings and loan association to charge the highest of three possible interest rates: the rate it would be permitted to charge in the absence of the provision; a rate of not more than one percent in excess of the discount rate on 90–day commercial paper in effect at the Federal Reserve Bank in the federal reserve district where such institution is located; or the rate allowed by the laws of the State, territory or district where such institution is located. Our interpretation rests upon the statutory language, which lends itself to this construction; Congressional intent; and the interpretation of the Federal Home Loan Bank Board (FHLBB), the regulatory agency charged with overseeing the regulation of federally insured financial institutions. The result of our interpretation of Section 1730g(a) in this case is that Illinois usury law both governs the loan to Gavey and, because it was a business loan for which Illinois specifies no interest ceiling, vindicates the transaction from a usury standpoint.

*Gavey Properties*, 845 F.2d, at 520–521.

As the principles of the *Gavey* decision are applied to the instant case, the Bank was entitled to charge the Plaintiffs an interest rate equal to the higher of: 1) the interest rate allowed under Michigan law; or 2) the Federal Reserve discount rate plus one percent; or 3) the rate the Bank would have been entitled to charge in the absence of Section 1730g. Here, there is no dispute that the Bank charged an annual interest rate of 10.4 percent. As the Bank notes in its brief (citing 1979–1980 Mich.Atty.Gen.Op., 942), this rate is well below the 25 percent interest rate allowed under Michigan law for a loan secured by a first mortgage on residential real property. Indeed, the Court finds that, even adding the $184.50 of interest that the Plaintiffs claim they were wrongfully charged, Plaintiffs cannot seriously argue that the effective interest rate charged by the Bank exceeds the 25 percent ceiling established by the usury statute.

The Plaintiffs then argue instead that Section 1730g incorporates all state usury limitations, not only those limiting interest *rates*. Plaintiffs, it appears to the Court, are attempting to bootstrap the Bank's alleged violation of M.C.L. Section 438.13c(9) onto a supposed violation of Section 1730g. However, nothing in the language of the statute nor in the cases which were cited to the Court by the Plaintiffs support such a wholesale incorporation of state usury laws. Therefore, the Court holds that the Bank did not violate Section 1730g by charging interest during the 6–day predisbursement period. Accordingly, that claim will be dismissed with prejudice.

The next two issues that the Court will address are really intertwined: the interrelationship between M.C.L. Section 438.-31c(9), and the federal statute which the Bank claims preempts the state statute. Taking them in logical order, the Court will first address the issue of whether the federal statute preempts the state usury statute.

■ With respect to preemption, the Bank argues that 12 U.S.C. Section 1735f–7a preempts all state usury laws otherwise applicable to the loan in this case. Section 1735f–7a provides as follows:

> Section 1735f–7a. State constitution or laws limiting mortgage interest, discount points, and finance or other charges; exemption for obligations made after March 31, 1980
>
> (a) Applicability to loan, mortgage, credit sale, or advance; applicability to deposit, account, or obligation
>
> (1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—
>
> (A) secured by a first lien on residential real property, by a first lien on

all stock allocated to a dwelling unit in a residential cooperative housing corporation, or by a first lien on a residential manufactured home;

    (B) made after March 31, 1980; and

    (C) described in section 527(b) of the National Housing Act (12 U.S.C. 1735f–5(b)).

12 U.S.C. Section 1735f–7a(a)(1).

Thus, this statute, on its face, expressly preempts state usury limitations that are otherwise applicable to a loan provided that the loan in question meets the descriptive requirements of subsection 1735f–7a(a)(1)(A)–(C). There is no dispute that the loan in the instant case meets those requirements. First, the loan was secured by a first mortgage on the Plaintiffs' residence; second, the loan was made after March 31, 1980; and third, the loan is a federally related mortgage as set forth in Section 1735f–5(b) because the Bank itself is a federally insured savings and loan institution.

The Plaintiffs argue in response that the language of the statute as interpreted by the applicable regulations, specifically 12 C.F.R. 590.3(c) and 590.4(b)(2), does not preempt the state statute.

With respect to this argument, the Court notes only that the Plaintiffs' position with respect to 12 C.F.R. 590.4(b)(2) is inapropos because that regulation on its face specifically applies only to transactions secured by a security interest in a mobile home or a manufactured home, which is not the case here, so the Court will not deal with that section.

With respect to Regulation 590.3(c), the Court does find that one possible interpretation is the one urged upon the Court by the Plaintiffs. This regulation is promulgated pursuant to Section 1735f–7a:

**Section 590.3  Operation**

   \*     \*     \*     \*     \*     \*

    (c) Nothing in this section preempts limitations in state laws on prepayment charges, attorneys' fees, late charges or other provisions designed to protect borrowers.

12 C.F.R. 590.3(c).

It is the Plaintiffs' position that even if the predisbursement interest in question here is not a prepayment charge, an attorney fee, or a late charge, it is a provision "designed to protect borrowers" and therefore would be subject to the regulation.

The problem with this regulation is that it states that, "this section," which implicitly refers to either the authorizing statute (which the Court must assume the regulators had in mind) or the regulation itself, does not preempt state laws on various "charges," whereas Section 1735f–7a itself explicitly states that "The provisions of the Constitution or laws of any state expressly limiting ... finance charges or other charges which may be charged ... shall not apply to any loan ..."

■  The Court observes that, all applicable rules of statutory construction require that, to the extent that the statute and the regulation might be inconsistent, the regulation itself must yield, and the Court must give effect to the statutory language. *Board of Governors v. Dimension Financial Corp.*, 474 U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986); *Melamine Chemicals, Inc. v. United State*, 732 F.2d 924, 928 (Fed.Cir.1984).

■  The Court is, frankly, uncertain as to whether this regulation does, in fact, contradict the statute. It appears to the Court from the structure of Section 1735f–7a, that "other charges" is meant to be a catch-all phrase that was intended to encompass anything that the bank requires the borrower to pay in exchange for a loan. The Court also notes that the legislative purpose of the Depository Institution Deregulation and Monetary Control Act of 1980, of which Section 1735f–7a is a part, is to promote the stability and the viability of federally insured financial institutions by freeing them of state regulation and allowing them to impose realistic borrowing rates. *Bank of New York v. Hoyt*, 617 F.Supp. 1304 (D.R.I.1985). Therefore, the broadest possible interpretation of the exemption from state usury laws is consistent with the legislative purpose.

**1058**

■ That being the case, the Court holds that Section 1735f–7a does preempt M.C.L. § 438.31c(9). Even though the Court has found preemption, it will nevertheless address the issues it believes are raised by the Plaintiffs with respect to their interpretation of Section 438.31c(9). Section 438.31c(9) provides:

> 438.31c Customer accounts of security dealers; realty and mobile home transactions; loan conditions
>
> *   *   *   *   *   *
>
> Section c(9). A mortgage loan or a land contract made under this Act shall not provide for a rate of interest added or deducted in advance, and interest on the mortgage loan or land contract shall be computed from time to time only on the basis of unpaid balances.
>
> *   *   *   *   *   *

M.C.L. Section 438.31c(9).

Michigan cases have not defined the meaning of "unpaid balances" under this section. However, the Plaintiffs assert that the term restricts a bank's right to charge interest only to that portion of the unpaid principal which has actually been disbursed to the Plaintiffs. In support of this proposition, the Plaintiffs cite the Court to decisions of other state courts which have interpreted what the Plaintiffs contend are similar state statutes. Specifically, Plaintiff rely most heavily upon the case of *Tri–County Federal Savings and Loan Association of Waldorf v. Lyle*, 280 Md. 69, 371 A.2d 424 (1977).

In the *Lyle* case, the Maryland Supreme Court held that a state usury statute with similar but not identical "unpaid balance" language prohibited the bank in question from charging interest on the homeowner's construction loan except on that portion of the loan principal which the bank had actually disbursed in the course of the construction of the home. It appears that the bank had actually charged interest on the full $60,000.00 amount of the loan despite the fact that only $15,000.00 had actually been disbursed for construction. The undisbursed $45,000.00 remained within the sole control of the bank, and the homeowner did not have access to these funds. The Court

in *Lyle* did hold that the bank had violated the state usury statute because interest was charged on the amount not disbursed.

The Court agrees that one possible interpretation of Section 438.31c(9) is the one urged upon it by the Plaintiffs. However, the Court also believes that this statute could be read simply to prohibit banks from charging prepayment penalties if the principal is repaid ahead of schedule. Further, another possible interpretation of this section is that it was intended only to prohibit lending institutions from charging interest at the commencement of a loan period in one lump sum and then amortizing this lump sum over the life of the loan irrespective of the borrower's rate of repayment. This is basically the construction that the Bank urges the Court to adopt. Indeed, this interpretation arguably is consistent with the statute's reference to a "rate of interest added or deducted in advance."

Given the ambiguity with which the statute is drawn, the Court is loathe to interpret it as the Plaintiffs urge. The Court finds that if the state legislature had intended to prohibit lenders from charging interest on undisbursed funds, it could have easily done so clearly and unambiguously. It did not, and this Court does not believe it is within the province of a federal court to attempt to read the minds of state legislators, an intent which is far from clear on the face of a statute they wrote.

Next, Plaintiffs claim that the Truth–in–Lending Act prohibits the Bank from charging interest during the Act's rescission period, and that the Act requires the bank to make certain written disclosures that were not made in this case. For the Bank's alleged violations, the Plaintiffs claim that they and the members of their purported class are entitled to statutory damages under 15 U.S.C. Section 1640.

■ The Court will address first the issue of whether the charging of interest is itself a violation of the Truth–in–Lending Act. Again, it seems to the Court that what the Plaintiffs are attempting to do is bootstrap the alleged prohibition against predisbursement interest which is purport-

edly contained in M.C.L. Section 438.31c(9) into a violation of federal law, in this case the Truth–in–Lending Act. The Court has already indicated, as a threshold matter, its view of the state usury statute. But beyond that, the Plaintiffs do not point to a single statutory provision that was allegedly violated. Instead, they argue only that the Bank violated an Official Staff Commentary to Regulation Z. This commentary provides:

> Section 226.23(c) does not prevent the creditor from taking other steps during the delay short of beginning actual performance. Unless otherwise prohibited, such as by state law, the creditor may, for example ...

> \*   \*   \*   \*   \*   \*

> accrue finance charges during the delay.

Federal Reserve Board Official Staff Commentary. Comment 23(c)–3, as amended, effective April 1, 1987; 52 Fed. Reg. 10.875 (1987) (Attachment L).

The Plaintiffs contend that M.C.L. § 438.31c(9) is such a state law. Plaintiffs argue that since the Bank allegedly violated § 438.31c(9) it also violated the Official Staff Commentary and therefore the Act itself.

■ Meaning no disrespect to the Plaintiffs, this rather procrustean interpretation is not supported by any provision in either the statute or the regulation and must therefore be rejected. The civil liability provision of the Truth in Lending Act by its terms imposes liability only for the violation of the statute, not for violations of Official staff commentary or for violations of state law.

Secondly, Plaintiffs argue that the Bank violated 15 U.S.C. Section 1638(a)(2)(B) because the Bank allegedly did not provide them with a choice of whether to obtain the written itemization of the "amount financed" as required by this section. The Bank argues in response that the Bank provided the itemization of the amount fi-

nanced itself rather than providing plaintiffs with a written statement that tells them that they can make a written request for such an itemization.

The Court finds that the Plaintiffs simply cannot make out a violation of Section 1638(a)(2)(B) on the Bank's part by virtue of the Bank's having failed to provide the Plaintiffs with a written opportunity to decline written itemization of the amount financed. The written forms themselves were provided to the Plaintiffs at the December 22, 1988, closing and, in fact, do contain all of the information required by Section 1638(a) and the subsections thereunder. Therefore, the Court finds that the Plaintiffs were not in any way misled by the Bank's actions and that there was no violation of the Truth–in–Lending Act in this context.

■ Plaintiffs then argue further that the disclosure on these forms was misleading in that, although the forms did disclose that interest would be charged from December 22, 1988, through December 24, 1988, it does not indicate whether that interest was for a legitimate cost or services provided to Plaintiffs before or during closing or whether it was simply a finance charge on the loan proceeds before disbursement. The Plaintiffs argue that this additional information should have been disclosed to avoid misleading the Plaintiffs.

However, Plaintiff Haskell Shelton[1] testified in his deposition in this case that there was a specific discussion between him and Mr. Lovely, the Bank's loan officer, about the predisbursement interest at the December 22, 1988 closing that arose on account of the loan officer's explanation of the predisbursement interest charge in this form. In other words, this exact issue was addressed not only at least implicitly in the form; it was addressed specifically by the bank officer at the closing. Indeed, from the deposition testimony, it is clear that Mr. Shelton was so exercised about this and so, for lack of a better term,

---

1. The Court notes that, although not a factor in any way in its decision, Plaintiff Haskell Shel-   ton is an attorney.

"unmisled" that he threatened to sue the bank.

In summary, there is simply no substance to Plaintiffs' claims under the Federal Truth–in–Lending Act, and those claims are dismissed with prejudice.

At this point, the Court has dismissed all federally-related claims and could remand the remaining state claims back to State Court, those claims being made under the Michigan Consumer Protection Act and the claims of constructive fraud and active fraud. However, the Court does not believe that this is necessary. These claims are in Federal Court on pendant jurisdiction, and the Court, for purposes of judicial economy, will address those claims.

■■■ First, with respect to Plaintiffs' Michigan Consumer Protection Act claims, they allege that the conduct of the Bank violated M.C.L. § 445.903(1)(*o*), (s), and (cc), of the Michigan Consumer Protection Act, which apply to certain specific unfair trade practices. Section 445.903 provides, in pertinent part:

> **945.903. Unfair trade practices; rules**
> Section 3.(1) Unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful and are defined as follows:
>
> \*     \*     \*     \*     \*     \*
>
> (*o*) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations or remedies of a party to a transaction.
>
> \*     \*     \*     \*     \*     \*
>
> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer and which fact could not reasonably have been known by the consumer.
>
> \*     \*     \*     \*     \*     \*
>
> (cc) Failing to reveal facts which are material to the transaction in light of

representations of fact made in a positive manner.

M.C.L. Section 445.903(1)(*o*), (s), (cc).

It is the Plaintiffs' claim that the Bank failed to disclose that the Bank charged interest from December 22, 1988 through December 28, 1988, and that the charging of such interest is illegal.

As to the first argument, Plaintiff Haskell Shelton's own deposition testimony, as noted, reveals that the fact that the Bank was charging interest during this period was disclosed by the Bank and discussed by the Plaintiffs during the closing. With respect to the second argument, it is not clear to the Court that the Bank would have a duty to disclose that such interest was illegal unless the interest was actually illegal. As discussed earlier, the Plaintiffs have not established the threshold requirement in this argument—that the interest was, in fact, illegal.[2]

Similarly, the Plaintiffs' state law fraud claims for constructive fraud and active fraud depend upon a finding by this Court that the conduct of the Bank in charging predisbursement interest was itself unlawful or in some way misleading or that the Bank somehow failed properly to disclose the interest to the Plaintiffs. As the Court has made abundantly clear earlier in its opinion, the Plaintiffs cannot make this preliminary showing, and the Bank is therefore entitled to summary judgment on the state law fraud claims as well.

The Court notes in conclusion that nothing in its opinion should be read to imply that this Court either approves of or condones in any way Mutual Savings and Loan's practice of charging its customers interest on undisbursed funds. The Court particularly observes that other than sheer revenue generation—which is, of course, a legitimate business purpose of the banking business—Mutual Savings and Loan has advanced no business or policy reason in

---

2. Because the Court believes the Bank is entitled to summary judgment on the Plaintiffs' claims under the Consumer Protection Act, it is not necessary for it to address the Bank's highly tenuous argument that the provisions of the Michigan Consumer Protection Act are not applicable because Section 445.904(1)(a) excludes conduct that is specifically authorized under laws administered by a regulatory board under the statutory authority of the United States. The Court will not address that defense, but, frankly, it is not persuaded by it.

support of this practice. The Bank's attorney, in oral argument, indicated that there was some deposition testimony which indicated that these funds were effectively escrowed, but he did not address the issue of what limitation this placed upon the Bank or its use of the funds. This is not determinative, however, of the legal issues, as the Court has noted.

The underlying basis for the Court's opinion on the major issues in this case is that this Court is not a legislative body. Absent a specific and clear statutory or common law prohibition, or some overriding injustice unforeseen by policy makers, which has not been shown in this case, courts are not the forum for resolving the kinds of policy issues raised here. This is particularly so in this case in which there are—as became abundantly clear during oral argument—seemingly two legitimate public policies in conflict. One public policy is the federal policy behind Section 501 of the Depository Institution Deregulation and Monetary Control Act of 1980 which is to promote the stability and viability on a national level of federally insured financial institutions by freeing them from state regulation. The second policy is a state policy reflected in both the state usury laws and the Consumer Protection Act, the concern of which is to protect banking customers in a state.

In the absence of more specific legislative direction, these policy matters should be addressed, and therefore reconciled by legislatures or, perhaps, with respect to the specific practice complained of in this case, in the marketplace. As the Court noted in oral argument, the Sheltons and other customers of Mutual Savings and Loan could have gone down the street to some other bank which did not charge predisbursement interest.

In summary, Defendant's Motion for Summary Judgment is GRANTED as to all Counts, and Plaintiffs' complaint will be dismissed with prejudice.

In view of this result, Plaintiffs' Motion for certification of the class that they purport to represent is moot, and the Court need not address that issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.